Smith vs. Crandall.

which are placed at their disposal to enable them to perform their legal obligations, express or implied.

*Judgment affirmed.*

(Decided Jan. 14th, 1864.)

AUGUSTINE SMITH vs. MARGARET A. CRANDALL & RICHARD H. CRANDALL.

SPECIFIC PERFORMANCE OF PAROL CONTRACT: PART PERFORMANCE.—To take a case out of the Statute of Frauds on the ground of part performance of a contract, the existence of the contract as laid in the bill, must be made out by clear and satisfactory proof, and the act of part performance must be clear and definite, and refer exclusively to the identical contract set up.

Every agreement, to merit the interposition of a Court of Equity in its favor, must be fair, just, reasonable, *bona fide*, certain in all its parts, mutual, &c., and if any of these ingredients be wanting, Courts of Equity will not decree a specific performance.

APPEAL from the Equity side of the Circuit Court for Anne Arundel County :

The bill in this case was filed by the appellant on the equity side of the Circuit Court for Anne Arundel County, against Richard Crandall, on the 14th of April 1857. The defendant having died during the pendency of the suit, the appellees, as his devisees, were made parties.

The bill seeks to compel the specific execution of a parol agreement made between Smith and Richard Crandall, for the conveyance by the latter of a parcel of land to him. It charges, that about the last of October 1846, the complainant contracted to purchase from John W. Chew and others, a parcel of land belonging to them, containing about ninety-six acres, lying in the swamp of Anne Aundel County, for the sum of $800; that not having the money at hand to pay for the land, he applied to Richard Crandall to lend

him the money; and it was then agreed between them, that Crandall was to lend the money to be paid to the Chews for the said land by the complainant, and would allow him twelve years for the repayment, he paying the interest in the mean time; and by way of securing the loan to Crandall, the complainant agreed that the land should be conveyed to Crandall by the Chews, and that he should reconvey it to the complainant after the repayment of the loan and interest; that in conformity with and in pursuance of this agreement, he obtained the sum of $800 so loaned him by Crandall, and paid it to the Chews for the land, and procured from them a conveyance of the land to Richard Crandall, but he avers, that this conveyance was only made by way of security for the loan, upon the express condition, that Crandall would receive the money with interest from the complainant within twelve years, and upon the receipt thereof, would reconvey the land to him; that the Chews placed the complainant in possession of the land immediately upon his payment of the purchase money, and that he has ever since been in possession of it, claiming it as his own, and in all respects exercising rights of ownership over it; that when he took possession, it was of a small value and unproductive, but that under his care it has more than doubled in value; that he has built an addition to the dwelling and all necessary out-buildings on it at his own expense, and laid out large sums in clover seed, &c., on the land; that for seven years after the purchase he continued to pay Crandall sums of money on account of the interest due him on the $800 according to the contract, and took his receipts for these payments, during all this time feeling the greatest confidence in the integrity and friendly disposition of Crandall, and remembering that the deed was only made to Crandall at his own suggestion to save the expense of a mortgage, he fully believed that he intended to abide by the agreement, and would each year receive as large a payment on account of the interest and principal, as the complainant might be able

to pay, until the expiration of twelve years, when the balance was to be paid; that in the latter part of 1857, he went to Crandall and offered him the interest due, and a payment on account of the principal, and then for the first time learned that Crandall intended to claim the ownership of the land, or some interest in it different from that reserved by the agreement; that he afterwards sent money to Crandall to be paid on the land, but he refused to receive it, saying that the land had increased in value since he lent the money, and he intended to hold it as his own; and that he is informed that Crandall has recently advertised it for sale as his own property, and he believes he would have attempted to sell it, except for a publication by the complainant warning persons against buying from Crandall. The bill then charges that Crandall's claim is fraudulent and unjust, that he still refuses to receive the interest or principal of the said loan, but claims the land as owner, and he fears that he may again attempt to sell it unless restrained, &c.; and further charges that the complainant is anxious to pay the balance of the loan remaining due, and to obtain a reconveyance from Crandall, but that he is without remedy, except, &c.

The prayer of the bill is, that the Court may decree a specific execution of the said contract, that the deed may be corrected so as to conform to the intention of the parties, that Crandall may be compelled to convey the land to the complainant upon the payment of the balance due, and may be enjoined from attempting to sell the land or interfere with the complainant's possession, until the further order of the Court, and that he may have further relief, &c.

Richard Crandall answered the bill, denying the alleged contract, and charging that he purchased the land for his own use and received the deed in the ordinary manner, that he always regarded the complainant as his tenant on the property, and that the repairs spoken of in the bill, were made by him as such. He then pleads the statute of frauds in bar of the alleged parol contract.

After filing his answer Richard Crandall died, leaving a will, by which his real estate was devised to his wife Margaret A. Crandall, for her life, and at her death to his nephew Richard Crandall, a minor, and the suit was revived as against these parties.

Margaret A. Crandall then filed her answer, denying all the material allegations of the bill, and pleading and relying upon the statute of frauds, in the same language as the answer of her husband, in bar to the claim of the claimant as insisted upon in his said bill.

The answer of the infant was taken by guardian, denying the matters charged in the bill. A commission was then issued, under which testimony was taken on both sides.

The deed for the land from the Chews to Richard Crandall, dated the 10th of November 1846, is an absolute deed.

John W. Chew, one of the grantors in this deed, testified that he represented the different parties in bargaining for the sale of this land; that he sold it to Smith, the complainant, for the sum specified in the deed, Smith stating at the time of sale, that Crandall would pay the amount of the purchase money, and that he, Smith, would pay Crandall back at his own convenience; that deponent asked Smith whose name should be inserted in the deed as purchaser, and he said, that although the land was intended for himself, that inasmuch as Crandall was to pay for it in the first instance, it would, perhaps, please him, Crandall, to have a deed in his own name, and the deed was drawn and executed according to this instruction; that after the execution of the deed, the deponent rode with it to Smith, who accompanied him to Crandall's, when the purchase money was paid by Crandall and the deed delivered to him; that Smith has been living on the land since the execution of the deed, prior to that time there was a negro tenant on the land; and that there was nothing said by Crandall with regard to the purchase of the land.

An exception was filed by the defendant to so much of

the testimony of this witness as relates to the declaration of the complainant himself, in reference to the contract for the purchase of this land; and also, to such testimony of other witnesses who testified as to their understanding, independent of their knowledge of facts, of any contract subsisting between the parties to this suit.

William H. Peake testified that he had a conversation with Crandall with regard to the purchase money of this land, in which he understood Crandall to say, that Smith purchased the property, and that he, Crandall, had advanced the purchase money to pay for it, and that if Smith paid him the interest of the purchase money, it was all he desired, until he, Smith, could repay him the principal; that this conversation took place after Smith was in possession of the property; that the Chews owned the land when deponent first saw it, and after then it was owned by Smith; that there were some improvements made upon the property, and some repairs on the dwelling house by Smith; that he thinks ten dollars per acre might be considered a high price for the land at the time the Chews sold it, but it is worth more now; that he supposes it would bring about fifteen or twenty dollars per acre; that he thinks so on account of the increased value of land generally, and of Smith's improvement of this land; but that he does not know to what extent Smith has improved it. This witness further stated on cross-examination, that no particular time was specified by Crandall in which Smith was to repay the purchase money.

James Deal, of Martin, testified that the land was owned by the Chews before it came into the possession of Smith; that Crandall told deponent he was going to purchase the land for Smith; that Smith had claimed the land from the time of the sale by the Chews; that he lived on it, logs were brought on it, the land was limed and house repaired; that he thinks the land worth a third more than it was at the time of the sale, and he attributes its increased value to the improvements and general rise in the price of land.

Smith vs. Crandall.

Thomas N. Weems testified as follows: Smith took possession of the land after the sale by the Chews, and lived on it, except one year, when he rented it to one Rogers, and Rogers called on witness to act with one Simmonds, as arbitrators, to apportion the rent between him, Rogers, and Smith. Simmonds was appointed by Smith, and deponent by Rogers, and they apportioned the rent between them. Deponent thinks Smith paid a high price for the land at the time he purchased; the land was very poor, and deponent did not consider the arable portion of it of any value in the situation it then was, but he thinks it now worth twenty dollars per acre, and if he wished to purchase, would give that for it; he has known land in the neighborhood to sell for that amount that was no better than this; lands in the neighborhood have improved in price from the general rise in the value of the land, but this has improved in actual value from the improvements put on it; he thinks it would bring double what it did before Smith took possession of it; Smith put manure from the woods on the land and limed it.

Edward Norris testified that Smith has been in possession of the land since its sale by the Chews, and has lived on it with the exception of one year, during which he rented it to Rogers; that the year Smith lived off the place, deponent called on Crandall to know what part of the division fence belonged to deponent, whose land it adjoined, and Crandall told him he did not know, that he had nothing to do with it, that the land belonged to Smith, and that he, Smith, would attend to it; that the deponent considered $800 the full value of the land at the time of the sale, it being extremely poor; that he considers the land now worth three times its then value, and would be willing to give that for it; that its improvement in value has been brought about by proper culture, manure, guano, lime, woods manure, &c.; and that he does not know at whose expense the improvements were made, but as far as his knowledge extends they were paid for by Smith.

Benjamin Davis testified that the land was purchased from the Chews, and that Smith has been in possession of it since that purchase; that the deponent heard before Crandall's death that he wanted to sell the land, and applied to him to buy it, and Crandall told deponent he could not sell it, that it belonged to Smith, and deponent then said to Crandall, if it is his I do not want it at any price; that this conversation took place more than two years ago; and that the land is worth double now what it was when Smith first took possession of it.

Amos Smith, in a letter which was admitted to have the same effect as testimony as if taken under the commission, says: "I was at Crandall's not long after this land was purchased, and A. Smith was living on it. Crandall told me that he had purchased it for A. Smith, that he wished him to have a home, and that A. Smith was to pay him the interest on the money, and the principal as he could; this is what I recollect distinctly."

Martin Deale testified that on the second day of James Kent's sale, he was present at a conversation between Crandall and John Nutwell, in which Nutwell said to Crandall, if he, Crandall, would give Smith a deed for the place, as he had bought it for him, that he, Nutwell, would pay him for Smith every dollar down; to which Crandall replied, "Dear me, Jackey Norris told me that some man coming from Long Island would give me $3000 for the place;" that Smith has been living on the place acting as the owner, and has been considered by witness and the neighborhood, as the owner; that Smith lived there all the time but one year, when he had a tenant on the place; that while Rogers was tenant on the place, witness, at the request of Crandall, went down to forbid Rogers from cutting any more timber off the farm; and that witness did not see Smith at the time, but Smith told witness at a subsequent period, that he was as much opposed to the timber being cut as Crandall. On cross-examination said witness also testified that he had never heard Crandall speak of the

land until late years, when he claimed it as his property; and that this was after Smith had ceased to sail Crandall's vessel.

Henry Leitch, collector for Anne Arundel County in 1851, testified that he went to see Crandall in 1852, about taxes and fees due him; that Crandall then stated to witness that he thought to get some money out of witness, and then presented a road certificate drawn by a supervisor of roads in favor of Smith for thirty dollars, and told witness he wanted the money on that certificate, as he had sold his place to Smith, and had received the certificate as payment on the land; that witness took the certificate and put it in his pocket, as Crandall owed witness a balance on fees and taxes; that Crandall remonstrated against his applying it in this way, but wanted witness to pay him the money, stating that he had received it in part payment of the purchase money due him by Smith for the land sold him, and that he did not know what he should do, but supposed he would have to go back on Smith for the amount; that witness remembers the conversation perfectly, and that nothing was said by Crandall about the certificate being paid to him for rent.

Three receipts, admitted to be in the hand writing of Crandall, were also filed with the commission, and these receipts, as they appear in the record, are as follow:

"Received of W. G. Smith the sum of thirty five dollars, for interest on the piece land bought of Nathan Chew and brothers. January 15th, 1848. Richard Crandall."

"1849, April 10th. Received of W. Guste. Smith the sum of twenty-three dollars, on account interest. Richard Crandall."

"Received of Augustine Smith, the sum of forty dollars, in part pay of the amount due me in December 1852. Richard Crandall."

On the part of the defendants four witnesses were examined, whose testimony is, in substance, as follows:

62    v. 20.

Thomas Rogers who was examined on the 11th of February 1858, testified that Smith had been living on the land for some years, in what capacity witness did not know; that deponent some four or five years ago was cutting ship timber on the place, and he received a notice from Martin Deale, as the agent of Crandall, to him, to desist, and deponent did desist; that Smith had employed witness to cut the timber, and he, Smith, knew of the notice from Crandall to him, witness, to desist, and made no objection; that Smith was not living on the place at the time, but on Dr. Mercer's place; that Smith had rented the place to witness for twelve months, and witness paid him the rent agreed upon; that witness cut down a small quantity of timber from the land, which he sent to Baltimore by captain Norris, witness receiving his part; and that Smith told witness to cut the trees, and witness was acting under his direction.

Wilson S. Wood testified, that, in 1856, Crandall requested witness to serve a written notice on Smith to leave the place on the first of January 1857, which witness served on the 8th of August 1856, that Smith told witness to tell Crandall that he would not leave, that the contract between Crandall and himself was, that he, Smith, was to have the place as long as he, Crandall, lived, and he, Smith, paid him the interest; that he, Smith, was a year or two behind hand in the payment of interest, but to tell Crandall that so soon as he sold his wheat, he would pay him up the interest; that Smith told witness he had another reason for not leaving, which was, that when he came to live on the place it was not worth five dollars an acre, and now that he, Smith, had improved it, Crandall wanted to turn him off; that Smith put no permanent improvements on the place of any sort, he put no new buildings to witness's knowledge, and only kept the place in ordinary repair; that the place is not worth any more now than when Smith went there to live; that witness is well acquainted with the place, lives about a mile and a half from it, and

sees it often; that witness is thirty years of age, lived with Crandall four years, and now lives with his widow and is managing for her, and has always lived in the neighborhood.

John Chaney testified, that he was well acquainted with the land, witness was on the place when Smith first went there to live, and Smith was having shingles prepared by Cruchley, the carpenter, to put on the house; that witness supposed Cruchley was getting them out for Crandall, but Smith told witness that he was not getting them out for Crandall, but for him, Smith, that Crandall only charged him the interest of money as rent, and that he, Smith, was to keep the buildings in repair, and that it was his Smith's business to keep the place up in consequence of the low rent charged him by Crandall; that Smith said the place cost Crandall $800, and that he, Smith, paid about forty-eight dollars rent.

Walter B. Norman testified, that he was well acquainted with the land, that the year deponent lived with Crandall, in 1853, 1854 or 1855, witness does not recollect exactly the year, but at Crandall's request witness called on Smith for one hundred dollars for rent, and Smith paid it, and took witness's receipt for the amount; and that Smith was living on the land at the time, and cultivating it.

The Court below, (BREWER, J.,) after final hearing of the cause, dismissed the complainant's bill and filed the following opinion:

"The bill claims a conveyance of a tract of land from the defendants, as a specific performance of a contract between Richard Crandall, (of whom they are the heirs,) and the complainant. The bill alleges, that the complainant bought the land from the Chews for the sum of eight hundred dollars, which sum was loaned to him by Richard Crandall, and the property at his instance conveyed by them to Crandall, who paid the whole purchase money, as a security for its repayment by the complainant; that the complainant immediately took possession of the land, and

has occupied it ever since under the contract with Cran-
dall, and has paid to him a part of the purchase money,
on which he was to have a credit of twelve years.   The
defendants do not admit the contract, but allege that the
land was purchased by the elder Crandall, and rented to
the complainant.   It is very difficult to say, upon what
equitable principle, or rather under what head of equity,
relief could be afforded, if at all.   Neither mistake nor
fraud is alleged or proved with regard to the conveyance
to Crandall, the payment of the purchase money or the al-
leged contract between Crandall and the complainant; so
that relief could not be given under either of those heads;
neither could the case be treated as a resulting trust aris-
ing from the payment of the original purchase money.   It
is alleged and proved that Crandall, upon the delivery of
the deed to him, paid the purchase money out of his own
funds, and nothing transpired at the time of the delivery
of the deed, or afterwards, to show that it was considered
by either of the parties as a trust deed or mortgage.   The
only head of equity therefore upon which relief could be
granted, is that of a specific performance, which, from the
allegations of the bill, I presume was the ground upon
which relief was originally sought, though the argument
of the complainant's counsel took a wider, though not a
very definite, range.   To the relief sought under this head,
the defendants pleaded the statute of frauds as a bar, and
there is no doubt that it is a bar, (as there was no contract
in writing,) unless the complainant can bring the case
within the exception of part performance by the delivery
of possession, or the payment of a part of the purchase
money.

In the first place, a complainant cannot demand the
specific execution of a contract, as a *matter of right*,
but it is decreed by the Court *at its discretion*, and only
on full and clear proof of the contract. *as alleged*, or of a
contract not materially differing from it, as well as of the
facts which are relied upon to take the case out of the
tatute.   The contract also must be mutual.   *Beard vs.*

*Linthicum*, 1 *Md. Ch. Dec.*, 346. 3 *Md. Rep.*, 490. 3 *Md. Ch., Dec.*, 404. 2 *Md. Ch. Dec.*, 403. 4 *Md. Ch. Dec.*, 133.

"There is no legal proof in this case that Smith, the complainant, made the contract with the Chews for this land on his *own account;* his own statement to that effect is not evidence, neither is there any evidence that he bought it as the agent for Crandall. The deed was given to Crandall, the money paid by him, and not a word was said at that time in reference to the subject by any one. There is, however, proof by the subsequent declarations of Crandall, that he did make a contract with Smith for the sale of the land to him; but there is little or no evidence of the amount to be paid for it, or the credit to be given, and some of the testimony, including Smith's own statements, renders it doubtful whether the contract was for a renting during the life time of Crandall, or for a sale. I think on the whole, that there is sufficient evidence of a contract of sale, but that it is destitute of that certainty, clearness and mutuality with which every contract to be enforced by a Court of Equity, ought to be clothed. Neither do I think that there is sufficient evidence of part performance to take the case out of the statute of frauds and perjuries. The possession may be referable to a contract different from the one alleged, or may be referable to a contract for renting. The alleged payments of part of the purchase money is obnoxious to the same remarks. The deed was given to Crandall in November 1846. The first payment was in January 1848, for thirty-five dollars, 'for interest on the piece of land bought of Nathan Chew and brothers,' which is not however the whole interest on the purchase money. The second receipt is for the sum of twenty dollars, 'on account interest.' The only other receipt is for forty dollars, not the exact amount of the interest for one year, but is stated to be 'in part pay of the amount due me,' written in one hand writing, signed by Richard Crandall in the same hand writing and with the same colored ink, and the words "in" being written with a different ink, and from the position of the words, written af-

ter the writing of the receipt, if not after its signature. There is no evidence of the payment of any other sum on account of this land from that time to this. The evidence as to the improvements on the land, are as unsatisfactory and contradictory as the evidence with regard to the purchase, possession and payments. On the whole evidence I do not think that this is a case upon which this Court, in the exercise of a sound discretion, ought to decree a specific performance."

Upon filing the foregoing opinion, an order was passed dismissing the complainant's bill with costs, from which order this appeal was taken.

The cause was argued before Bowie, C. J., and Goldsborough and Cochran, J.

*A. B. Hagner,* for the appellant :

I. The cotemporaneous declarations of Smith to the witness Chew, in reference to the contract, are admissible as part of the *res gestæ,* and the exceptions of the complainant to the evidence of the defendants' witnesses are well taken. *Farringer vs. Ramsay,* 2 *Md. Rep.,* 373. *Mc-Dowell vs. Goldsmith,* 6 *Md. Rep.,* 338. *Powles vs. Dilley,* 9 *Gill,* 234.

II. The testimony in this case comes up to the measure of proof recognized repeatedly by the Courts as sufficient to authorize the interposition of equity in enforcing the specific performance of the contract. 1 *Md. Ch. Dec.,* 244, and same case. *Shephard vs. Bevan,* 9 *Gill,* 32. *Morris vs. Harris, Id.,* 30. *Dugan vs. Gittings,* 3 *Gill,* 138. *Drury vs. Conner,* 6 *H. & J.,* 288, *Graham vs. Yates, Id.,* 229. *Haines vs. Haines,* 6 *Md. Rep.,* 439. *Mortimer vs. Orchard,* 6 *Ves., Jr.,* 243. 14 *Johns.,* 28. 2 *Eq. Ca. Abr.,* 17. *Brown on Stat. of Frauds,* secs. 455, 456, 465, 466, 467, also 472, 480, 485, 494 and 495.

If the time of payment were not distinctly proved, the Court would decree that it be made within a reasonable

time. *Farrell vs. Bean*, 10 *Md. Rep.*, 233. *Triebert vs. Burgess*, 11 *Md. Rep.*, 463. 2 *Pow. on Cont.*, 234. *Newland on Cont.*, 157. *Roberts on Frauds.*, 135, 136. 1 *Sugd. on Vend.*, 210.

The clause of the statute of frauds involved in this discussion will be found in *Brown on Stat. of Frauds, sec.* 116.

The decision in the Court below, and the cases cited from *Md. Ch. Dec.*, show that both the learned judge who decided this case below, and Chancellor Johnson, seem to have a leaning against the specific performance of parol contracts. The cases decided by Chancellor Johnson, which are relied on on the other side, have been overruled by this Court, and the weight of authority is against them. *Bro. on Stat. of Frauds, secs.* 454, 456, refers to these very cases and says, they are "*opposed to the clear preponderance of judicial authority.*" See also, *secs.* 465 to 467, 472, 480, 494 and 495. The case of *Parkhurst vs. Van Courtland*, 1 *Johns. Ch. Ca.*, 273, was over-ruled by the appellate Court which reviewed it. See 14 *Johns. R.*, *same case*, 28, 31. The appellees' counsel on the last page of his brief says: "All agreements to be executed in equity must be certain and well defined, equal and fair, and proved as the law requires, and it is enough to doubt on any one of these points to refuse relief," and cites as his authority *Mundorff vs. Kilbourn*, 4 *Md. Rep.*, 459. Such is the language of judge Tuck in delivering the opinion in that case, but by reference to the case of *Walpole vs. Orford*, 3 *Ves.*, 402, relied on by the judge for the law thus announced, it will be found that instead of the words, "on *any one* of these points," in that case the words used are, "on *every one* of these points."

III. In this case Smith bought the land from the Chews, and Crandall took the deed in his name for Smith's benefit. This constitutes the case of a resulting trust in favor of Smith, and such cases are admitted to be without the statute of frauds.

IV. Under the prayer for general relief, &c., this Court can decree the deed to Crandall to stand as a mortgage.

Smith *vs*. Crandall.

*Farrell vs. Bean,* 10 *Md. Rep.,* 232.    *Rob. on Frauds,* 131, 136, 138.    *Gough vs. Crane,* 3 *Md. Ch. Dec.,* 135.

*O. Miller* for the appellees :

The only relief which the appellant under his bill can claim, is the specific performance of the contract alleged to have been made between him and Richard Crandall in his life time, in reference to the land in question. The case presented then is that of a parol contract for the sale of land denied by the answers to which the statute of frauds is pleaded as a bar, and where acts of part performance are relied on by the appellant to take the case out of the operation of the statute. In such a case it is clear that a decree for specific performance is not *ex debito justitiæ,* but rests in the sound discretion of the Court, to be given or refused as the peculiar circumstances of each case may demand, and by repeated decisions of the Courts certain requisites are essential to the granting of the relief asked.

The agreement and all its terms must be fully and clearly stated in the bill, and that identical agreement must be established by full, unequivocal and satisfactory evidence. It will not do to allege one agreement in the bill and establish another by the proof, the agreement alleged and proved must be identical.

2nd. The agreement so alleged and proved must be fair, just, reasonable, *bona fide,* mutual and certain in all its parts, and if any of these ingredients are wanting, equity will not decree a specific performance, and it is enough to doubt upon any of these points to refuse relief.

3d. The acts of part performance relied on must be equally clear and definite, and established by the same full, unequivocal and satisfactory evidence, and shown to be done in pursuance of the identical agreement charged in the bill; these acts must be referable exclusively to the contract set up in the bill.

In support of these positions reference need be made to

but few of the many decisions made by the Courts of this State.

A decree for specific performance is not *ex debito justitiæ*, but rests in the sound discretion of the Court, to be given or refused as the particular circumstances of each case may demand. *Wardsworth vs. Maning*, 4 *Md. Rep.*, 59. *Crane vs. Gough*, 4 *Md. Rep.*, 316; and 3 *Md. Ch. Dec.*, 119. And even if a contract is sufficiently established or admitted, it still remains with the Court, as a matter of sound discretion, whether under the circumstances it will decree the specific performance. *Waters vs. Howard*, 8 *Gill*, 275, 262, 276, 277. See, also, *Philpott vs. Philpott*, 4 *Md. Ch. Dec.*, 273.

Where a complainant relies upon acts of part performance, to take a parol agreement for the sale of lands, (denied by the answer,) out of the operation of the statute of frauds, it his duty to offer full and satisfactory evidence of the terms of such agreement, and of the performance of it on his part, to entitle him to a decree for specific execution. *Hall & Wife vs. Hall, et al.*, 1 *Gill*, 383.

Where the statutes of frauds is relied on in the answer, as a bar to a specific execution of a parol contract, it can only be evaded by full proof of the acts of part performance charged in the bill. *Owings vs. Baldwin & Wheeler*, 8 *Gill*, 347.

The Courts are never anxious to grasp at slight circumstances to take a case out of the statute. They adopt the rule that the contract should be clear and definite, and the acts done should be equally clear and definite, and solely with a view of the agreement being performed. *Shepherd vs. Bevans*, 9 *Gill*, 34.

Where a party seeks to take a case out of the statute of frauds on the ground of part performance, he must establish the existence of the contract as laid in his bill, by clear and satisfactory proof, and the acts of part performance must be of the identical contract set up. *Ches. & Ohio Canal Co. vs. Young*, 3 *Md. Rep.*, 480. *Mundorff &*

*Wife vs. Kilbourn,* 4 *Md. Rep.,* 459. *Stoddert vs. Bowie,* 5 *Md. Rep.,* 18; and 4 *Md. Ch. Dec.,* 475.

All agreements to be executed in equity must be certain and defined, equal and fair, and proved as the law requires, and it is enough to doubt on any one of these points to refuse relief. *Mundorff vs. Kilbourn,* 4 *Md. Rep.,* 459.

Every agreement to be specifically executed, must be fair, just, reasonable, *bona fide,* mutual and certain in all its parts, and if any of these ingredients are wanting, equity will not decree a specific performance; *Stoddert vs. Bowie,* 5 *Md. Rep.,* 18; and 4 *Md. Ch. Dec.,* 475. See, also, *Allen vs. Bourke,* 2 *Md. Ch. Dec.,* 534.

In order to take a case out of the statute on the ground of part performance, the plaintiff must make out by clear and satisfactory proof, the existence of the contract as laid in the bill, and the acts of part performance must be of the identical contract set up by him. It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill. Where delivery of the possession is relied upon, it is indispensable that such delivery to and taking possession by the defendant should be referable to the contract alleged in the bill, and not to a distinct or different title. *Owings vs. Baldwin & Wheeler,* 1 *Md. Ch. Dec.,* 120. *Beard vs. Linthicum,* 1 *Md. Ch. Dec.,* 345. *Duvall vs. Myers,* 2 *Md. Ch. Dec.,* 401.

Applying these principles and decisions to the case now before the Court, it will, I think, be clearly seen, that the decree appealed from must be affirmed; for:

1st. The contract is not set out in the bill with the necessary degree of certainty, to enable the Court to decree a specific execution.

2nd. The contract, as alleged, is not established by any proof in the cause, nor is any contract proved by that clear, unequivocal and satisfactory proof, which is required in such cases.

3rd. The acts of part performance relied on are not prov-

ed to be referable exclusively and solely to the contract set up in the bill.

4th. Nor has the contract alleged, or attempted to be proved, the necessary requisites of fairness, justness, reasonableness, *bona fides*, mutuality and certainty in all its parts, so as to authorise its specific execution.

5th. The testimony of the witness, John W. Chew, in which he gives the declarations of the appellant as to the contract, and what the appellant said at the time of the sale, being excepted to, is clearly inadmissible and incompetent evidence.

Under the allegations of the bill it is hardly necessary to argue the appellant's second point. A resulting trust is where a purchase has been made in one name and the purchase money paid by another. 2 *Story's Eq.*, secs. 1201, 1201 a. To make out a resulting trust, Smith should allege and show that he paid the purchase money. The bill should have alleged and it should have beeen shown, that he borrowed the money from Crandall and advanced the money as the consideration of the purchase.

Another point is, that the absolute deed from the Chews to Crandall should be corrected so as to make it a mortgage from Smith to Crandall. The true grounds for correcting a deed will be found stated in 1 *Story's Eq.*, secs. 152 and 157.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The object of the bill filed in this case by the appellant, is to enforce the specific performance of a parol contract alleged to have been made with Richard Crandall some time in October 1846. The parol contract is set out in complainant's bill. In addition thereto he alleges, that immediately after the contract, he took possession of the real estate embraced in the contract and continued in possession until the filing of his bill, except one year, when he rented it to a tenant. That he made valuable and permanent improvements on the land during his occupancy,

and has paid part of the purchase money. Richard Crandall (who has died since the filing of the bill) filed his answer and utterly denied every material allegation, and also relied for defence on the statute of frauds.

After his death his widow and infant son, as his devisees, were made defendants by bill of revivor, came in and answered the bill. They also denied the allegations in the bill and relied on the statute of frauds. In this state of the case, the appellant had no other resource but to rely upon parol evidence to establish the contract and take the case out of the statute. In disposing of the appellant's claim for relief, we may well be guided by those judicial precedents applicable to this subject, so clearly defined by our predecessors.

In reference to a parol contract for the sale of lands, this Court laid down the doctrine in 3 *Md. Rep.*, 490, that "where a party claims to take the case out of the statute of frauds, on the ground of part performance of the contract, he must make out, by clear and satisfactory proof, the existence of the contract as laid in the bill; and the act of part-performance must be of the identical contract set up. It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the *particular* agreement charged in the bill." Again, in 4 *Md. Rep.*, 459, 462, the Court say, "we need not multiply authorities to show that in cases for specific performance, the complainant must establish the very contract set up in the bill: and that all acts of part performance relied upon to take the case without the operation of the statute of frauds, must be clear and definite, and refer exclusively to the alleged agreement." See, also, 5 *Md. Rep.*, 35, where the Court said, "no rule is better established than that every agreement, to merit the interposition of a Court of equity in its favor, must be fair, just, reasonable, *bona fide, certain in all its parts,* mutual, &c., and if any of these ingredients are wanting, Courts of equity will not decree a specific performance."

We have measured the evidence by these standards and find, though there might have been some agreement between the appellant and Richard Crandall about the land in controversy, that there is a manifest defect in the proof as to what that agreement was.

In this state of uncertainty, we cannot be expected to wander in the field of conjecture to make out a contract for the parties. In the case of *Shepherd vs. Bevans,* 9 *Gill,* 43, it is said, "this Court is never over-anxious to grasp at slight circumstances to take a case out of the operation of the statute of frauds, nor to allow themselves any latitude of construction, where there is any equivocation or uncertainty in the case presented. The contract should be clear and definite, the acts done should be equally clear and definite, and solely with a view to the agreement being performed." 2 *Story's Eq.,* sec. 762.

As there is, in our opinion, an absence of such proof as is required by the authorities above cited, the equity of the appellant is not aided by the allegations and evidence of part performance, especially as these allegations, under the evidence in the cause, may be accounted for upon grounds other than those of the contract alleged. *The* contract must first be established, failing in this, these superadded considerations, to induce the interposition of a Court of Equity, can have no avail.

The decree of the Circuit Court must therefore be affirmed.

*Decree affirmed with costs to appellee.*

(Decided Jan. 14th, 1864.)