# MARY A. CROSS ET AL. *vs.* MARGARET A. ILER.

*Land Purchased by Husband With Wife's Money Under Oral Agreement to Secure Payment—Compensation Decreed When Specific Performance Refused—Laches—Competency of Witness—Admissions.*

When land has been purchased with money supplied in part by the plaintiff on the faith of an oral promise to convey a portion of the land, then, although specific performance of the agreement cannot be decreed on account of the Statute of Frauds, the plaintiff is entitled to compensation to the extent of the money advanced.

The husband of the plaintiff purchased a farm from a trustee in an equity case and paid one-third of the purchase money. The sale was ratified, but before payment of the balance due one H, who owned the land and would have been entitled to the proceeds of sale died, leaving the plaintiff as his only distributee.   An arrangement was made by which the administrator of H stated an account charging himself with the receipt of the purchase money and accepting a release from the plaintiff for her share of H's estate, it being the understanding of the parties that such charge and release should constitute the payment of the purchase-money of the farm.   The plaintiff's husband told her that a conveyance would be made to her to secure her interest in the land.   No such conveyance was made nor was one ever executed by the trustee in the equity cause.   Plaintiff and her husband lived together on the farm for nearly thirty years, when he died intestate.   Plaintiff then filed the bill in this case asking for a sale of the land to satisfy her claim for the portion of the purchase-money so paid by her.   *Held*, that the evidence

establishes the allegations of the bill, and, although the contract by which the plaintiff's husband agreed to convey to her a part of the land cannot be enforced because not in writing, as required by the Statute of Frauds, yet she is entitled to compensation to the extent to which her money was used in the purchase of the land.

*Held*, further, that since plaintiff's delay in asserting her claim is satisfactorily accounted for, and no one has been injured by the delay, laches is not a defense to the bill.

*Held*, further, that the Statute of Limitations, as contained in Code, Art. 57, sec. 3, is not applicable to the plaintiff's claim.

When a bill is filed by a widow to enforce a claim against land purchased by her husband, on the ground that the purchase money was supplied by her and that her husband promised to give her security therefor, she is not a competent witness to prove such agreement, but a daughter of the deceased, who is one of the defendants, is a competent witness on the call of the plaintiff, under Code, Art. 35, sec. 3.

When the question is whether a party furnished the money used by another in the purchase of land, documentary evidence, such as Court records, is admissible to show that that party was possessed of the means to make the advance.

Admissions made by a husband to his wife in the presence of third parties to the effect that he had received from her money with which certain land was bought, and that he would give her a conveyance of a part of the land in consideration of such advance, are admissible in evidence, on a bill to enforce the claim against the heirs at law of the husband.

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., and BROWN, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Walter I. Dawkins*, for the appellants.

*Olin Bryan*, for the appellee

JONES, J., delivered the opinion of the Court.

On October 4th, 1904, the appellee in this case filed in the Circuit Court for Cecil County her bill of complaint alleging that Talbot S. Iler died in March, 1904, intestate and leaving no debts against his estate; that he left the appellee, his widow, and the appellant, Mary A. Cross and Maggie H. Iler Jones,

who with their husbands were made defendants to the bill, his only children and heirs at law; that the deceased in 1874 purchased at trustee's sale a parcel of fifty-three acres of land for twenty-seven hundred and fifty dollars ($2,750); that of this purchase-money he paid nine hundred and sixteen 67-100 dollars; that the balance of said purchase-money—eighteen hundred and thirty-three 33-100 dollars—he paid with the moneys of the appellee under the following circumstances.

The land so purchased at the trustee's sale in question by the deceased was sold at said sale as the property of one William J. Hudson, then an infant. Before the payment of the purchase-money but after the ratification of the sale the said Hudson died and one Joseph H. Steele was appointed administrator of his estate. Said Steele stated in the Orphans' Court an administration account in which he accounted for the net proceeds of the sale referred to and showed a balance in his hands of twenty-four hundred and three 46-100 dollars which was ordered by the Orphans' Court to be paid to the appellee as the lawful distributee thereof. The balance of purchase-money for the said land, eighteen hundred and thirty-three 33-100 dollars, was paid, it is alleged, by the administrator of William J. Hudson charging himself with said purchase-money as having been paid to him by Talbot S. Iler and accepting from the said Iler and the appellee a release for the distributive share of the latter in the estate of the said Hudson.

The bill then avers that "not having received the money mentioned as having been paid to her in said release but the same having been applied for and on account of the said purchase-money" the appellee "was informed that a deed would be executed conveying to her the entire fifty-three acres, or so much thereof to cover the interest she had in said land by the payments by her as aforesaid ; that said conveyance was never made to" her, and she "was further informed that a deed was not necessary to be executed to her as she had inherited the said land from the said infant, William J. Hudson ;" and that no deed has ever been executed by the trustee for the land in

question and the said trustee is now dead. The bill then prays that the land be sold to satisfy the claim of the appellee for the part of the purchase-money therefor paid out of her moneys as alleged, and for general relief. Subsequent to the filing of the bill Mary A. Cross, one of the appellants, was made defendant in the case as administratrix of Talbot S. Iler.

The appellants, Mary A. Cross and husband, answered the bill denying that the appellee paid any part of the purchase-money in question out of her funds and averring that if she advanced any money to her late husband for such purpose the same had been fully repaid to her by him. They also plead limitations as follows "the alleged claim of the plaintiff did not accrue within twelve years before the bringing of this suit." Mary A. Cross in her answer as administratrix says that no personal estate of the deceased has come to her hands —"the same being claimed by the plaintiff (appellee) under color of title;" and adopts the statements and denials contained in the answer of herself and husband. The answer of Maggie H. Iler Jones and husband admits the allegations of the appellee's bill and submits to a decree as prayed. After testimony taken and returned the Court below decreed payment of the appellee's claim. This appeal is brought by Mary A Cross and husband and by the former as administratrix.

Before proceeding to the question of the title of the appellee to relief upon her bill and proofs it may be said that the defenses set up by the appellants of limitations, and the necessity of a prior resort to the personal estate of the deceased by the appellee for payment of her claim may be considered as eliminated from the case. As to limitations the appellants evidently relied upon the provisions of section 3 of Article 57 (Code, 1904) but it is quite obvious that it is not sought here to enforce any obligation of the character of those described in that section and to which is applied the period of limitations therein provided. As to personal estate of the deceased the administratrix admits that none has come into her hands and that, as to such as she rather intimates than alleges a claim to, there is at least a color of title adverse to such claim. As

against this apparently *prima facie* adverse title there is no proof at all.

It may be further said in this connection that the defense of laches urged in the argument by the appellant against the appellee's claim is not available under the circumstances disclosed. It is not made to appear that anybody has suffered, or that anybody, other perhaps than the appellee herself, could suffer prejudice by her delay in urging her claim. Her failure to proceed against her husband in his lifetime is reasonably accounted for in the proofs; and what was said in *Bowie* v. *Stonestreet*, 6 Md. 418, as respects this defense to a claim of a wife against her husband is applicable here.

Before considering the effect of the proofs in the case under the pleadings the exceptions to testimony will be disposed of. Appellants' exceptions to the testimony of the appellee (plaintiff below) as a witness were sustained and this ruling has the approval of this Court. The appellee was a party to the cause and the proceeding was one against heirs as such, and in which it was sought to have a decree against them. She was therefore directly within the disqualification provided in section 3, Article 35, Code, and was not a competent witness "to testify as to any transaction had with or statements made by" her deceased husband. The evidence given by the witness was as to matters that she was thus excluded from testifying to.

The exception to the competency of the defendant, Mrs. Jones, as a witness, was properly overruled. Though a party she was called as a witness by the plaintiff—"the opposite party." Her alleged identity of interest with the plaintiff, in whose behalf she was called, urged as a reason for her incompetency, is answered by the reasoning in *Duvall, Admr.*, v. *Hambleton et al.*, 98 Md. 12, upon a question identical with the one here raised.

The other exceptions go to the admissibility of the documentary evidence consisting of certified copies from the proceeding, and of the release, referred to in the appellee's bill; as also to the competency of evidence in connection therewith;

and of declarations made by Talbot S. Iler in conversations given in evidence. It seems clear that the documentary evidence was all admissible as going to show the means possessed by the appellee for making the advances of money she claimed to have made to her husband and the sources thereof. This tended to support and corroborate the evidence adduced of the fact of such advances. The evidence offered in connection with the documentary evidence was, in part, evidence proper to show its relation to the transaction in question; and in addition to show the independent fact that, of the means the appellee was shown to be possessed of, there was advanced to her husband, or he was permitted to use the money for which the claim is here made. That she was possessed of means to make the advance is one fact; that she used or applied it as she alleges is a distinct and independent fact. The parol evidence in question in nowise varied or contradicted the documentary evidence, nor any part of it. Every fact this latter evidence purported to verify is intended to have, and is left with full force and effect. The parol evidence was only to afford proper explanation of the relation of the written evidence to the parties and the subject of controversy; and to prove further and distinct independent facts relevant to the appellee's contention.

As to the declarations of Talbot S. Iler, in so far as these were testified to by witnesses held to be competent, there was proof of such declarations direct to the appellee, or in her presence, which, if not made in such connection with the principal act as to be *res gestae*, were in the nature of admissions, and tended to induce and to explain delay on the part of the appellee in prosecuting her claim during the. lifetime of her husband by giving her assurance of·a recognition of it. No rights of creditors were to be affected by such declarations, as offered here; but they were offered against the deceased himself and those claiming under him as his heirs at law. There is not therefore in any of this evidence, as to declarations, the infirmity that was pointed out in some of that of·like character offered in *Bowie* v. *Stonestreet*, 6 Md. *supra*. The evidence,

offered by the appellants and excluded on the exception of the appellee thereto, was clearly inadmissible.   If the facts sought to be proved be assumed to be proper evidence the means of proving them were clearly defective.

We will now see how far the proofs support the allegations of the appellee's bill.   Mrs. Jones testified that "when the child (meaning the infant, William J. Hudsen, referred to in the bill), died and Mr. Steele, the administrator, desired to be released my father (meaning Talbot S. Iler) told my mother (meaning appellee) if she would sign the release to Mr. Steele, that two-thirds of this 53 acres would be deeded to her, as to use his words it had reverted by law to her, being the only heir." On cross-examination she explained that what she intended and meant by this was that her father stated he would give to appellee the deed for the 53 acres and at the same time give to Mrs. Cross, one of the defendants, and a child of Talbot S. Iler by a prior marriage, $300 and that would leave the entire farm clear in appellee's name "and that was what he said as long as he lived and was able to speak intelligently about business."   She further testified that her father died in 1904 and that he "talked of it all during his life even during the time that he was ill," which was "through 1903 and 1904 all during these years;" that "these 53 acres were worked in connection with the adjoining property 40 acres which was the property" of her mother; "it was all tilled as one farm;" and that her father bought the 53 acres, "paying on it one payment of nine hundred and some dollars and he said that he never paid the other two-thirds because it reverted to" her "mother being the nearest heir to the minor and he always promised her that the deed should be given to her in her name."

As to this evidence there is practically no contradiction and it has corroboration from other testimony in the cause.   This is afforded from the documentary proofs already referred to. Steele, the administrator named in the bill and the evidence, testified that the appellee signed the release spoken of; that he remembered that $916.67-100 came into his hands, that

the rest of the money (purchase-money) was not received; and that the payment was settled in some other way "just how" he was not prepared to say as he remembered nothing definite about it.   Mrs. Cross testified that she had heard her father say his wife (appellee) wanted a deed, but did not give any reason why she wanted him to give the deed.   When asked on cross-examination if she did not know that her father, Talbot S. Iler, made only one payment on the land—answered "I knew that."   It is admitted in the pleadings that Talbot S. Iler never obtained a deed of the land in question either for himself or for the appellee; and it is shown by the report of the trustee in the case in which the property in question was sold that Talbot S. Iler, as purchaser, paid $916.67-100, one-third of the purchase price, and gave notes with security for deferred payments at one and two years for $916.67-100 each. Now it is to be presumed that these notes have been retired. The evidence is that Talbot S. Iler did not pay them.   It is · supposable also that if he had paid them he would have taken the deed at the time in his own name.   That he did not get a deed gives plausibility at least to the allegation of the appellee that he had said a deed was not necessary for the reason stated in the bill and declared by him, as shown in the evidence, that the land in question "reverted to" the appellee.

The situation seems to accord with the allegations of the appellee's bill and the evidence in support of them that has been referred to.   That evidence is to the effect the wife's (appellee's) money was used to pay for the land in question to the extent of two-thirds of the purchase price; that she did not intend to give this money to her husband, but allowed it to be used, and united in the arrangement to settle for the land by releasing her claims upon the estate of her relative, Hudson, upon the faith of the land being security for the money so released.   Just what the agreement was between the appellee and her husband or what were its terms and conditions is not rendered by the evidence, definite and certain.   For that reason as well as because, if it is to be regarded as an agreement concerning land, it fails to gratify the fourth section of

the Statute of Frauds, it cannot be specifically enforced, nor enforced at law.    The case in all of its features is so closely analogous to that of *Schroeder* v. *Loeber*, 75 Md. 195, that the two cases cannot be distinguished on principle.    In the case referred to, the Court, through JUDGE BRYAN, said after advert-ing to the considerations which have been mentioned as exist-ing in this case, and which the Court found had been shown to exist there "it does not follow that the wife ought to lose her money because of the invalidity of the contract for invest-ment.    Amidst the uncertainties surrounding the transaction it is distinctly shown that the money was not given to her hus-band, but that her interest in it was retained and that it was their object to secure it by this investment.    The contracts of a husband with his wife in reference to her separate property can be enforced against him by her in equity when properly established.    The circumstance that this contract was verbal, did not extinguish her right to the money she advanced her husband in pursuance of it."    Compensation was accordingly decreed in that case to the extent of the money shown to have been received by the husband from the wife.

The principle which the Courts recognize as the foundation of relief in this class of cases was stated in *Bowie* v. *Stonestreet*, 6 Md. *supra*, quoting from 1 *White & Tudor's Lead. Cases in Equity*, 527, as follows: "When the specific execution of a parol agreement cannot be decreed, in consequence of the un-certainty in the terms, or of the statute being relied on, the Court will, if there is no remedy at law, or it is uncertain or embarrassed, or under circumstances of special equity, decree compensation to the extent of the purchase-money paid, and the value of lasting improvements."    The principle has been recognized and applied, under varying circumstances, in a number of cases in this Court, and it is fully illustrated by those relied upon by the Court below.    Besides those already referred to may be mentioned *Green* v. *Drummond*, 31 Md. 71; *Powell* v. *Young*, 45 Md. 496; *Girault* v. *Adams*, 61 Md. 12.    We agree with the Court below in applying the principle

in this case, and also as to the measure of compensation fixed
by its decree and will affirm the same.

> *Decree affirmed with costs to the ap-*
> *pellee.*

(Decided June 15th 1906.)