## FLORENCE CHAMBERLAIN *v.* ALBERTA B. PRESTON ET AL.

[No. 44, October Term, 1935.]

*Decided January 22nd, 1936.*

2

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Thomas F. Cadwalader,* for the appellant.

*Frederick Lee Cobourn,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The complainant in a suit to compel her niece, the owner of land on which the aunt has built a bungalow, to convey the site and a surrounding portion of land to the aunt, appeals from a decree denying the right to relief and dismissing the bill.

There is an agreement of testimony, or lack of dispute, on these facts. The aunt, Miss Chamberlain, had for some years lived with a Mrs. Walsh, who died in 1932. Miss Chamberlain had two nieces, daughters of two sisters. She had saved about $3,000, and held it deposited in two substantially equal savings accounts, with each of the nieces named as entitled on the aunt's death to the money in one account. The amounts on deposit were never disclosed to the nieces. Mrs. Walsh had provided Miss Chamberlain, in addition, with an income of fifty dollars a month. After Mrs. Walsh's death, Miss Chamberlain, in May, 1932, went to live with the one niece, Mrs. Preston.

Mrs. Preston owned a field of five acres adjacent to a lot of ground on which she and her husband had their dwelling. The house lot, divided from the field by a hedge, belonged to Mr. and Mrs. Preston as tenants by the entireties. The aunt's bungalow was built in close proximity, at a distance from the Preston house estimated by the aunt as one and a half times the width of the

court room in which her testimony was given, and a common water supply for both houses was arranged by installing an engine and other equipment in the Preston house, and from that leading to the bungalow. The aunt paid for the engine and paid a share of the cost of electricity used to run it. She also contributed an amount to pay taxes on her bungalow, but none to pay taxes on the ground. There was no change in the assessment to the niece on the tax books of the county. The aunt, however, testified that she supposed she was paying taxes on the ground as well as on the house. She testified that all, or nearly all, her savings were used in building the bungalow, equipping it, and grading the yard for it. The parties lived on in this situation, in complete harmony, for two years, until the aunt asked for a deed to the land occupied by her, and the niece and her husband declared this had never been intended and declined to give it.

There are differences in testimony to the remaining facts, although still some agreement. The aunt testified that a few weeks after she went to live with the niece she (the aunt) remarked that she would like to have a house of her own, and that the niece said, "Why don't you build yourself one. I will give you the ground." And three other witnesses testified for the aunt to subsequent statements of Mrs. Preston's that she had given the aunt the land to build on. The niece testified that, shortly after the aunt came to live with her, the aunt asked whether she might build a bungalow on the niece's property, and added that the bungalow would be the niece's share of what the aunt had, and the niece might have to pay Mrs. Phelps, the other niece, $200 or $300 to make her share balance up, to which Mrs. Preston replied that she did not want to get mixed up with Mrs. Phelps over what the aunt had left Mrs. Preston, after the aunt had gone. Mr. Preston, before the bungalow was built, stepped off, or pointed out, a portion of the ground for the bungalow, designating the place for a lane on one side, with the hedge on the other, and remarking that a locust tree in the rear was on his land. Both the aunt and he testified

that this was done to show where the house was to be placed. No measurements were taken then, or at any other time spoken of. The aunt had no conception of measurements of the space claimed. But the defendants testified that it was a space appropriate for use in connection with a house built there, and expressed willingness that the aunt should, in any event, occupy it for her life.

The testimony does not show that the parties ever spoke specifically of a conveyance or of title in the plot of ground until 1934, two years after the building of the bungalow. Then, the aunt said, she was moved to ask for a deed by two considerations, that, if she should fall sick, she could not raise money on the property by a mortgage, and she was sorry that her friends should think her so dumb as to build a house without a deed to the land. She considered herself dumb for doing it. Mrs. Preston answered, as stated, that she never intended to give the aunt a deed, had never thought of that, did not intend to convey the land to the aunt in that way. She and her husband are willing that the aunt continue to live there during her life, but not to give a deed. One lot has been sold from the five acres, but requests for disposal of other lots have all been refused. Somewhat later, the niece testified, the aunt stated that, if the question of the land was settled satisfactorily to her, the aunt would still divide her estate between the two nieces. Now she declares her intention that this niece shall have none.

The principle on which the demand for a conveyance is based, that when, after a parol agreement by a landowner to convey, improvements have been made on the faith of the agreement, the land owner may be required to convey, assumes, of course, that the landowner's original undertaking to convey shall have been established. The foundation of a decree must be the same as that for enforcement of a contract to sell or to devise land, or for reformation and enforcement of such a contract, and must be similarly established. The first, indispensable

step of the party demanding a conveyance must therefore be the production of clear proof of an original contract or gift. The statute of frauds was intended to avoid claims to land based on allegations of parol transactions, with the incidental uncertainties and weakening of record titles, and the statute is dispensed with only upon a high degree of certainty in the proof of an original undertaking. "This court is never over anxious to grasp at slight circumstances to take a case out of the operation of the statute, nor to allow themselves any latitude of construction, where there is any equivocation or uncertainty in the case presented. They adopt the rule that the contract should be clear and definite, the acts done should be equally clear and definite, and solely with a view to the agreement being performed. * * * It may be a matter of regret that there ever was a departure from the strict and rigid construction of the statute. But the embarrassments in fixing the precise character of every variety of agreement in parol, and the circumstances that exclude them from the operation of the statute, have elicited the settled rule by which courts of equity are now governed." *Shepherd v. Bevin,* 9 Gill, 32, 43. "If uncertain or ambiguous, a specific performance will not be decreed. For the court may enforce precisely what the parties never did intend or contemplate." *Waters v. Howard,* 8 Gill, 262, 276. "In all applications like the present the rule is certainly strict in requiring the most satisfactory evidence of the contract sought to be enforced." *Hardesty v. Richardson,* 44 Md. 617, 621; *Loney v. Loney,* 86 Md. 652, 38 A. 1071; *Smith v. Crandall,* 20 Md. 482, 500; *Chesapeake & Ohio Canal Co. v. Young,* 3 Md. 480, 490; *Wilks v. Burns,* 60 Md. 64, 68; *Tarses v. Miller Fruit & Produce Co.,* 155 Md. 448, 452, 142 A. 522; *Pomeroy, Specific Performance of Contracts,* sec. 131.

The evidence in this case the court thinks insufficient to support a finding of an original contract with the degree of certainty demanded, agreeing with the chancellor in this conclusion. The informal, slight conversation originally had on the subject of the aunt's building

on the site, the dispute on the effect of it, the lack of any mention then, or during two years subsequently, of a conveyance, or of any particular title, the proximity, and the arrangement for joint use of the water facilities, leave the case lacking in the necessary assurance of a precise meeting of the minds on a separation of the two portions of the land and a vesting of an independent title in the aunt. But this court comes to the conclusion that the bill should not have been dismissed, but should have been retained for an award of compensation to the complainant for any betterment or increase in value which she was led to bestow on the land of the defendants.

The aunt appears to this court to have been misled by expressions of the niece into expending on the land of that one niece all, or nearly all, of the aunt's savings, which she intended leaving ultimately to both nieces equally. As the case stands, she has no title to the improvements, and can have no enjoyment of them except at the will of that one niece, and cannot devise any property rights in them, or in the plot of ground, for she herself has none. This the court finds to have been contrary to her intention. And, contrary to her intention, the niece has acquired any increase in value which the expenditure may have brought to the land. In such a situation the complainant has an equity for which the court can, as it regularly does, provide a readjustment by payment of compensation from the landowner. The remedy is only by compensation in this instance, for, as no money was paid, there is none to be ordered repaid.

The remedy of specific performance should, then, be denied, and, after evidence has been taken to inform the court as to any increase in value of the plot of ground in dispute resulting from the improvements, the defendant should be required to pay the complainant the amount of any increase found, and for the payment of it the complainant should be given a lien on the plot of ground involved. *Bowie v. Stonestreet*, 6 Md. 418, 430; *Green v. Drummond*, 31 Md. 71, 86; *Girault v. Adams*, 61 Md. 1, 12; *Duckett v. Duckett*, 71 Md. 357, 360, 18 A. 535;

*Schroeder v. Loeber,* 75 Md. 195, 200, 23 A. 579, 24 A. 226; *Cross v. Iler,* 103 Md. 592, 600, 64 A. 33; *Byer v. Szandrowski,* 160 Md. 212, 221, 153 A. 49.

*Decree reversed and cause remanded for further proceedings in accordance with this opinion, with costs to the appellant.*