## SOMMERMAN v. SOMMERMAN

[No. 238, September Term, 1957.]

154

*Decided May 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Samuel S. Eisenberg* for the appellant.

*Wallace Dann* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County, dismissing the bill of complaint of the appellant which had sought reformation of a deed, or, in the alternative, the impression of a trust upon certain real property in favor of the appellant for expenditures made by her.

The appellee, a widow, is the mother-in-law of the appellant. In 1937, the appellee obtained the property in question by devise from her husband. Her husband's will is not in the record; so, the exact estate that she derived from him is not certain, but we shall assume she held the same in fee simple. The appellant married the appellee's son in 1948

and two children were born as a result of this marriage. The appellant claims that in 1952 the appellee promised her and her husband that if they would remove from the home where they were then living and reside in the property now in dispute that the appellee would do certain things. These things were, as alleged in the bill of complaint, that if the appellant and her husband would live in the subject property "that their names (the appellant's and her husband's) *would be placed on the title to the property; * * ** that if the Complainant (appellant) and her husband would renovate the property and pay one-half (½) of the taxes, water, and would meet the payments of insurance, mortgage, and other *expenses, that their names would be incorporated in the title.*" (Emphasis supplied.) These allegations were denied in the answer.

In 1952, when the proposal was first made that the appellant and her husband change their place of abode so as to live in the subject property, said property was in need of repairs. The appellant testified that her husband had $1,000 and she had about $200, the total of which was expended, over a two-year period beginning in July of 1953 when they moved into the subject property, in renovating the house upon the property. However, additional money was required to make the substantial improvements needed. In order to obtain this money, the appellee deeded the property to a straw party, who, in turn on May 25, 1953, deeded it back to the appellee for the term of her natural life with full power to sell, mortgage, lease or dispose of the same including the remainder; and, after her death so much of the property that remained undisposed of, if any, to her son, the appellant's husband. On that same date, the mother and son executed one mortgage and on July 31, 1953, another, both totaling $8,875, the proceeds from which were expended in improving the building upon the property.

The appellant testified she learned that her name was not on the mortgages when the mortgage account book was received by mail in 1953, but she claims that it was not until after the death of her husband, who committed suicide on January 16, 1956, that she knew that the title to the house

had not been changed and that the house did not become hers upon his death.

During the time that the appellant and her husband occupied the property together from July, 1953, until January 1956, they paid the taxes, interest on the mortgages and, apparently, $150 upon the principal. After her husband's decease, the appellant continued to occupy the property for the period of a year, during which time she made minor expenditures for improvements which will be mentioned later.

From the above it will be seen that the appellant has expended about $200 (the other small claims will be considered later) of her own money upon the premises; so, it is readily seen that her individual funds have created no substantial equities on her side, if those funds are treated in any manner that she requests. She has brought suit only in her individual capacity. She does not explicitly make any claim as a surviving *joint* obligee, see 2 *Williston, Contracts,* secs. 128-132, but if we assume, without deciding, that she is a surviving joint obligee, the best position in which she may be placed, we are still unable to find that she should prevail. In addition to her individual expenditures, her husband spent $1,000 on improvements and $150 on the principal of the mortgages, paid the interest on the mortgages, and the taxes on the property. They occupied the premises together from July, 1953, until January, 1956.

The only testimony offered by the appellant to sustain the allegations of her bill of complaint, quoted above, in regard to the alleged agreement of the appellee to transfer the property to the appellant and her husband was given by the appellant, alone, and was as follows:

"Q. What was said to you and your husband? A. She (appellee) asked us not to buy the house (another house the appellant and her husband were considering purchasing); to move to Fitch Avenue, (the subject property) she would give us the home there. And I wouldn't move there, because it was too run down and dilapidated, unless they made

some repairs to the house,—before I would step foot out of where I was.

\* \* \*

"Q. Did Mrs. Sommerman (appellee) make any statement to you with respect to that request, or demand? A. Not directly to me, no, sir.

"Q. Or to you and your husband? A. She told us we could do what we wanted.

\* \* \*

"Q. What, exactly, did she say? A. She said if we would move back on Fitch Avenue, we could do what we wanted to,—the house was ours.

"Q. You could do what? A. Remodel or do what we wanted to; the house was ours."

Upon the above statement of facts, we are requested to reverse the finding of the chancellor and rule that there should be a "reformation of the title to the property involved," or, in the alternative, the property should be impressed with a trust for expenditures. We are referred to such cases as *Jaworski v. Jaworski,* 202 Md. 1, *Masters v. Masters,* 200 Md. 318, *Shives v. Borgman,* 194 Md. 29, and *O'Connor v. Esteves,* 182 Md. 541, as precedents for this request. We entertain no doubts concerning the correctness of the principles of law stated in these and other cases like them; but we think they contain nothing that assists the appellant. The decisions in those cases were predicated upon and recognized the rule which is ably stated by former Chief Judge Bond in *Chamberlain v. Preston,* 170 Md. 1, 4, as follows:

"The principle on which the demand for a conveyance is based, that when, after a parol agreement by a landowner to convey, improvements have been made on the faith of the agreement, the land owner may be required to convey, assumes, of course, that the landowner's original undertaking to convey shall have been established. The foundation of a decree must be the same as that for enforcement of a contract to sell or to devise land, or for reformation and enforcement of such a contract, and must be simi-

larly established. The first, indispensable step of the party demanding a conveyance must therefore be the production of clear proof of an original contract or gift. The statute of frauds was intended to avoid claims to land based on allegations of parol transactions, with the incidental uncertainties and weakening of record titles, and the statute is dispensed with only upon a high degree of certainty in the proof of an original undertaking. * * * 'In all applications like the present the rule is certainly strict in requir-ing the most satisfactory evidence of the contract sought to be enforced.' "

This same principle was reaffirmed in the *Shives, Estevez, Masters* and *Jaworski* cases, all *supra* and cited by the appellant, and in the *Shives* case, a suit for specific performance of an alleged verbal contract, the Court added (194 Md. 35) these words, which seem pertinent here: "The *acts* performed by the complainant should also be clear and definite and solely with a view to the performance of the alleged contract." (Emphasis added.)

We think the appellant has failed in her first "indispensable step" by not showing a clear, definite and distinct agreement with her mother-in-law by satisfactory, clear and convincing proof to a "high degree of certainty." Her only evidence of the purported contract is her own oral testimony. Such vague expressions as our "names would be placed on the title to the property" and our names "would be incorporated in the title" have little, if any, legal significance. There are some thirty or more different estates in real property that may be held by a person in Maryland. If the appellant's and her husband's names were "to be placed on the title," in what manner was this to be done and what estate, or estates, was each to hold? This is only one of the many questions left unanswered by the appellant. In addition, such statements as she told us "we could remodel or do what we wanted; the house was ours" adds very little to clarify the alleged agreement, when considered with the other evidence adduced by the appellant. The oral testimony of the appellant is not only

weak, vague and uncertain, but is seriously challenged by the other evidence. The mortgages signed by the appellant's husband, the party with whom the appellee was directly dealing, clearly recite the estates held in the property by the mother and son, and show that the appellant held no interest therein, excepting a possible inchoate right of dower. These mortgages show that the mother had a life estate in the property with full power to encumber or dispose of the same, and the son had a remainder in any portion undisposed of, at the time of the death of his mother. The appellant's husband knew how the title to the property was held for two and a half years and made no complaint concerning the same. The signing of the mortgages by the husband and his acquiescence in the mode in which the title was transferred to him and his mother tend toward establishing performance by the mother of any agreement that she had with her son and his wife. Without laboring the question further, we think the evidence offered by the appellant of the alleged agreement by the appellee with the appellant and her husband is sorely lacking in clarity and would need substantial bolstering in corroboration either by direct testimony and/or circumstances in order to justify granting any of the relief requested; so, we hold that it is entirely too vague, indefinite, unsatisfactory, and uncertain to warrant a "reformation of the title" or the impression upon the subject property of a trust in favor of the appellant.

This leaves two small items for disposal. First, the appellant claims $244.68 for a bathroom placed in the property by her after her husband's death. After her husband's death in January, 1956, the appellant remained in the property for about a year. There came a time when she desired to put in an additional bathroom to accommodate two lodgers, whom she was accommodating. The appellant claimed she made the expenditure for this bathroom upon the assurance of the appellee that "the house was going to be put in my name." This fact is disputed, but, again, if we assume, without deciding, the appellant incurred the expense upon the claimed assurance, we think the circumstances do not justify her recovering it. When contracts are unenforceable because they come within the statute of frauds and payments have been

made upon the purchase price, or expenditures are made upon another's property under a *bona fide* and mistaken belief that the property is to be given to the one making the expenditures, or there is some other legal impediment, and the legal remedy to the injured party is inadequate, it has been held by this Court and by other jurisdictions that it would be inequitable, under certain circumstances, not to redress the injury done in some way. The basis of these decisions is that it would be a shocking injustice for the property owner to receive the unjust benefits of an unenforceable contract and to escape with them, leaving the other party with no remedy. *Chamberlain v. Preston, supra,* 170 Md. at page 6; *Scott v. White,* 190 Md. 389, 392, 393; *Maryland State Housing Co. v. Fish,* 208 Md. 331; cf. *Spruell v. Blythe,* 215 Md. 117.

There is, however, no basis for applying the above rule in this case. As stated, the appellant lived in the property for a year after her husband's death. She paid no rent, and the only expense, other than the bathroom and storm windows mentioned below, that she incurred for living therein was the payment of the interest on the mortgages, the taxes and insurance premiums. In addition to her use of the property to house her family, she received $20 per week from lodgers for at least a portion of the time. From the above, we think it is safe to conclude that the appellee received no sufficient benefit from the appellant, over and above the appellant's benefits, to warrant a holding that it would be unjust not to require the appellee to pay the appellant for this bathroom. Cf. *Maryland State Housing Co. v. Fish, supra.*

Second, and the final contention of the appellant, is her claim to reimbursement for the expenditure of $305.80 for storm windows. The chancellor found that this expense was incurred by the appellant after she had been definitely cautioned not to do so until such time as she had title to the property, and we see no reason to disturb this finding. If the appellant made this expenditure voluntarily after she had been warned and notified not to do so, she assumed the risk of not being repaid therefor.

*Decree affirmed, with costs.*