KRAUSS ET UX. *v.* LITMAN ET UX.

[No. 31, October Term, 1949.]

*Decided December 7, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William Hoffenberg* for the appellants.

The Court declined to hear argument for the appellees. Submitted on brief by *Daniel Ellison* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is the second time this case has been before us. In the first appeal, *Krauss v. Litman,* 189 Md. 394, 56 A. 2d 37, the appellees (Litmans) had filed a bill for specific performance of a contract of purchase of the property in question. Mrs. Krauss had not signed the agreement, and her husband, in signing it, was not alleged to have signed for her. We held, therefore, that there was no contract which could be enforced under the Statute of Frauds against the wife, and that, as the property was held as tenants by the entireties, we could not enforce the husband's contract against that property. In view of the fact, however, that the appellees had advanced some $11,000 which was used in improvements on the property, we felt that the case ought not to be disposed of on demurrer, and we remanded it in order that possible amendments might be made to the bill, and the Chancellor might have an opportunity to hear the

whole case, on what might be alleged and what might be proved, and to determine whether the appellees had a lien upon the property for their advances.

The bill was amended, and in the amended bill the relief prayed was that the agreement be rescinded and annulled, that the defendants (appellants here) be required to pay back all the money received as well as proper expenses and damages, and that the property be impressed with a lien or trust in favor of the Litmans to the extent of money due. Further allegations were made as to the participation by Mrs. Krauss in the making of the original arrangement, and as to her knowledge of the payments made by the Litmans and the acceptance of the corresponding benefits. The Chancellor upheld the contentions of the appellees, and directed the appellants to pay them the sum of $11,776.79 with interest from January 1, 1947, making said sum a lien upon the property in question, subordinate only to a mortgage, and directed a sale of the property unless settlement was made within 30 days from the date of the decree. The contract between the parties was rescinded. From this decree, this appeal comes here.

Some technical questions which we find are without merit were raised, but the chief question is whether the evidence is sufficient to justify the holding that Mrs. Krauss participated in the negotiations and accepted the benefits. The facts are extraordinary. The Litmans went to the Krauss apartment, although they had never before known them, at about eleven o'clock one night during the latter part of July, 1946. The visit was made after a phone call in which Mr. Litman was told by Mr. Krauss that the house, 3212 Barrington Road, could possibly be bought. They entered into a discussion with respect to the house, then under construction by the appellants. A definite understanding was had at that time that the house and lot were to be sold to the appellees by the appellants at a price of $25,400 and a written contract was to be executed by the parties incorporating this understanding. Mr. Krauss says that he was the

only one that had the understanding, and that his wife did not participate in the discussion as to the sale or price. His wife testified to the same effect, and said she was simply being sociable and entertaining for two people whom she had never before met, and who had come there to discuss the house. Shortly after the initial discussion, $5,000 was paid to Mr. Krauss by the appellees, and thereafter additional payments, totaling $6,000 were made by them to him. Bills amounting to $216.35 for material going into the house were paid by appellees and bills amounting to $466 for similar materials were incurred by the appellees. Mrs. Krauss testified that she did not know, and was not aware, of the fact that the house had been sold to the Litmans, or that the $11,000 had been paid, until December, 1946, although she had not gone to see the house during the period from July. Mr. Litman testified that Mrs. Krauss said the house was to be almost exactly like her former home in Virginia, and that they were building it to live in. He also said that she said that the price suggested was a very reasonable one and that she told her husband, "Well, you are building it for us, it is your baby, if you want to do anything you want with it, it is perfectly all right with me." The conference lasted until a quarter of one in the morning, and Mr. Krauss gave Mr. Litman a key to the property. Then from time to time, he asked for money and got it. Finally Mr. Litman refused to give any more money until the contract which he had prepared was signed, and subsequently, Krauss gave him the contract signed by himself, but not by his wife. Mrs. Litman also testified that in December, 1946, she took some people over who were interested in buying the house from the Litmans. She was showing them around the house when Mr. and Mrs. Krauss and two friends of theirs entered. There were introductions all around and Mrs. Krauss remarked that the house was very lovely and a lot of work had been done on it since the last time she was there. Mrs. Litman said, "How come you haven't been here so long?" Mrs. Krauss answered,

"The answer is it isn't ours, we have sold it to you and I have no particular interest in it now." Mrs. Krauss was a kindergarten teacher in the Baltimore City schools, and was, in no sense, an ignorant woman. She denied that any offer of purchase was made at the time of the meeting in July at her apartment, and she said the meeting was purely social, and there was no offer of purchase made. This last statement was directly contrary to her husband's testimony. She went to New York the next day and did not come back until Labor Day. Some of her money went into the construction of the house, but she said she did not know that her husband could not complete the property until December, 1946. She denied Mrs. Litman's testimony about her statement in December. Mr. Krauss said that he and Mr. Litman talked about a price of $25,000 but Mrs. Krauss didn't discuss it with him afterwards. She wasn't there when it was said, she knew nothing about it, and he didn't tell her until December when he had already gotten $11,000 from the Litmans.

The Chancellor, Judge Sherbow, in his opinion said:

"Gentlemen, I have had the witnesses here before me. Mr. and Mrs. Litman, I believe and find have told the truth. They went to the apartment of Mr. and Mrs. Krauss that night to buy the property. There was an agreement to buy the property. I want to say for the record I do not believe Mrs. Krauss. Mrs. Krauss impressed me as a lady who was perfectly willing to say whatever you wanted her to say. She was perfectly willing to go along with whoever happened to be examining her. When I asked her questions she fully agreed. This cold record does not show how she testified, and I think that is most unfortunate. I can simply say she did not impress me. I find she knew in that two-hour meeting that night that these people were buying the property, intended to buy the property, and she and her husband were perfectly willing to take a nice profit and sell it to them. It was not until later this technical defect was discovered; or, perhaps, without finding it

so, maybe it was planned, but I cannot say it was planned. But it has not helped anybody else by reason of the fact that it has turned out so badly for everybody concerned. I find that Mr. Krauss acted for his wife, was her agent, dealt with this property for her, and could not possibly have been to any greater extent her individual agent if she were standing alongside of him O.K.'ing every move as he made it. That is exactly what took place. It is incredible that he would be building a house for her and himself, with her money, living only a short distance away, perhaps ten minutes by taxicab, fifteen minutes by street car, and not once have gone out to see the property that he was building for her home." and

"I want to add this. That the proof, in my judgment, makes out a case beyond any question in my mind that Mr. and Mrs. Krauss both together dealt with Mr. and Mrs. Litman. Mrs. Krauss went away, but she knew, and I do not believe either when they say she did not know, she knew what was going on, that the purchase had taken place, and that the tremendous deposits had been paid, and that the Litmans had this substantial investment in the property."

The Chancellor saw and heard the living actors. We read only the cold printed script. In a case such as this, where it is entirely a question of veracity, we accept the Chancellor's determination on the facts in the absence of any clear error. Not only do we fail to find any such error, but his conclusion seems to be the only common sense result which a trier of facts could reach in any such case as the one before us.

Since the facts are as found, the case clearly comes within the decisions of this court in *Chamberlain v. Preston,* 170 Md. 1, 6, 182 A. 579, *Boehm v. Boehm,* 182 Md. 254, 34 A. 2d 447, and *Scott v. White,* 190 Md. 389, 58 A. 2d 490. The money advanced by the appellees went into the construction of the house. The appellants hold the property in trust to repay this amount to the appellees, and if this is not done, the property should be sold, and the appellees reimbursed.

The appellants suggest that the amounts of the payments to third parties and the obligations of the appellees to third parties should not be included, particularly pointing to the fact that the last have not actually been paid by the appellees and may never be paid. That is not a matter for appellants to be concerned about, as no claim is being made upon them by those to whom the obligations are due. Without discussing them in detail, these obligations are for things that went into the property and were provided by the appellees or on their credit. It is not a question of a lien by mechanics or other persons for materials furnished to a house. It is a question of money or materials furnished by the appellees, which went into the house, furnished on the strength of representations made by appellants, and for which they are entitled to have their trust enforced. We find no error in the decree.

*Decree affirmed, with costs.*