GEORGE W. KRAUSS, ET AL. *v.* HARRY LITMAN, ET AL.

[No. 51, October Term, 1947.]

*Decided December 12, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William Hoffenberg* for the appellants.

*Daniel Ellison* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from orders of the Circuit Court No. 2 of Baltimore City overruling the separate demurrers of

the appellants to a bill of complaint for specific performance filed against them by the appellees.

The bill alleges that the appellants, owning a fee simple unimproved lot of ground in Baltimore City as tenants by the entireties, were engaged in July, 1946, in the construction of a dwelling house and garage thereon. At that time the appellees-complainants, started negotiations with the appellants to purchase the lot and improvements when the same were completed in accordance with the plans and specifications then submitted to the appellees. These negotiations, in which the appellant, Mollye Krauss, actively participated, resulted in appellants' offer to sell to the appellees the lot and to complete the improvements thereon for the sum of $25,400 of which $5,000 was to be paid in cash and the balance was to be paid at the time of the consummation of the transaction, which time was to be after the improvements had been entirely completed. All of these terms were to be incorporated in a written agreement to be signed by the parties hereto. The appellees accepted the offer, and on August 3, 1946, paid $5,000 and had an agreement prepared in accordance with the terms of their verbal agreement. This agreement, which is filed as Complainants' Exhibit No. 1, was left with George W. Krauss, one of the appellants, who, it is stated, acted as agent and servant of Mollye Krauss. It shows four lines at the bottom, at the end of each is the word "Seal", and under each line is the name of the party supposing to sign on that line. These names in order are George W. Krauss, Mollye Krauss, Harry Litman and Selma Litman. Attached to the agreement is a notary's certificate of acknowledgment which is to be made on a blank day in August, 1946, by George W. Krauss, "one of the sellers", and Harry Litman, "one of the buyers".

The bill further states that thereafter George W. Krauss demanded additional payments on account of the purchase price on a plea that unless they were made, appellants would not have sufficient money to complete the improvements, and that relying on the agreement of sale the appel-

lees made additional payments on September 16, 1946, of $1,000, on September 23, 1946, $2,900, and on November 28, 1946, $2,100, making a total paid of $11,000, and it is stated that "this money was used for the construction of certain improvements". Meanwhile, the contract of sale was not executed and delivered to the appellees. In the early part of December, 1946, George W. Krauss asked for additional payments and appellees told him no additional money would be paid until the contract of sale was duly signed and delivered. Thereupon George W. Krauss delivered to the appellees the contract of sale, executed by him, but not by his wife, Mollye Krauss. The agreement submitted is filed as Complainants' Exhibit No. 2. It is apparently a typewritten copy of Complainants' Exhibit No. 1, with certain omissions and additions and certain other changes are made in ink. There is a change in the purchase price from $25,400 to $26,000. A warranty clause is omitted, the date of completion is fixed at January 1, 1947 instead of October 15, 1946, there is a credit of $11,000 and there is a penalty provided of $3 a day for each day after January 1, 1947. This agreement contains the same provision for execution and acknowledgment as that in Complainants' Exhibit No. 1. It was signed by George W. Krauss on the line provided for his signature, but the line left for Mollye Krauss's signature was vacant. As filed, it also contains the signatures of the appellees on the lines provided for them. The bill states that in addition to the payments of $11,000 made prior to the delivery of this written agreement, the appellees also, at the request of Mr. Krauss, paid to certain material men, furnishing material for the house and garage, sums aggregating $216.35. At the time of the filing of the bill of complaint all improvements had not been finished, but on January 15, 1947, counsel for the appellants called Harry Litman, one of the appellees, and told him that the appellants did not intend to convey the property in accordance with the contract of sale, and that the latter could not be enforced because of the failure of Mrs.

Krauss to sign. The bill further avers that the appellants have performed all their requirements, that they are willing and ready to pay the balance of the purchase price, and they ask that the agreement, Complainants' Exhibit No. 2, may be specifically enforced, that the appellants be required to complete the improvements in accordance therewith, and to convey the premises in accordance with the terms of the contract upon payment of the balance of the purchase money. There was also a prayer for further relief. The appellants filed separate demurrers in which they alleged, among other things, that the contract is not enforceable by reason of the Statute of Frauds, that the Court cannot enforce the agreement against the defendant, Mollye Krauss, and that the complainants have a full, complete and adequate remedy at law. These demurrers were overruled in separate orders.

The appellants show that there is nothing in the bill of complaint alleging that either agreement was ever submitted to Mollye Krauss or that she agreed to either of them, that there is nothing to show in what manner she actively participated in the negotiations leading up to the oral offer, nor is there anything to show that she received any of the payments of money. They cite the case of *Weininger v. Weininger*, 140 Md. 227, 117 A. 568, in which the Court found that the proof sustained the allegations of the bill as to the husband, but as the estate was by the entireties, specific performance could not be decreed against the husband alone. They also contend that there is no allegation of part performance, as payments are not so considered, citing *Boehm v. Boehm*, 182 Md. 254, 34 A. 2d 447. Therefore, as to Mollye Krauss, there are not sufficient allegations even of an oral contract, and such a contract could not be enforced against her, if there were such allegations. Since the property is held in tenancy by the entireties, and the contract signed by George W. Krauss alone cannot be specifically enforced, the only remedy left to the

appellees is to proceed in law against the appellant, George W. Krauss.

It is quite apparent from the record that it was the intention of the appellees that a written contract should be entered into by both of the appellants. Whether they waived this requirement by accepting the contract signed by George W. Krauss, is not important at this stage of the matter. As to Mollye Krauss, we have a situation somewhat similar to that in the recent case of *Kaufmann v. Adalman,* 186 Md. 641, 47 A. 2d 755. In that case the allegations show prospective vendors and vendees had orally agreed on the terms and conditions of a lease, and a written lease had been prepared. The attorneys for both parties had practically accepted the lease prepared, with the exception of certain minor changes. While it was being retyped, the vendors advised the vendees that they would not go through with the matter because they had given a third party an option to purchase the property. The bill was for specific performance of the oral contract. We held there was no doubt that the lease was to be evidenced by a writing, that no such writing was signed and, therefore, the case came within the ban of the Statute of Frauds and there could be no specific performance.

The allegations here do not go to the extent of stating that George W. Krauss, in signing the agreement, was acting for his wife or even claiming to act for her. He signed his name in the place prepared for his signature. He did not sign as agent for his wife, and the place where she was to sign was left blank. We held in the case of *Blenard v. Blenard,* 185 Md. 548, 45 A. 2d 335, 339, "Neither the existence of the relationship of husband and wife, standing alone, nor knowledge by the wife of the husband's intention to construct a building on her land, together with failure on her part to object, is sufficient to constitute him her agent in constructing the building. *Adkins & Douglas Co. v. Webb,* 160 Md. 571, 577, 154 A. 259. This is equally true of property owned solely by the wife and of her interest in property owned by herself and her husband as tenants by the entireties.

*Kvedera v. Mondravitzky,* 145 Md. 260, 263, 125 A. 591." We have, therefore, before us, at the most, oral negotiations entered into by both the wife and the husband resulting in an oral offer to sell the property which was accepted upon the condition that a written agreement should be entered into. Then we have payments of $11,000 before such written agreement is made and finally we have a written agreement on which there is no signature by the wife, nor by any one purporting to act for her. In addition we have a recently completed building which has been constructed upon the property of the husband and wife, held as tenants by the entireties, and in the construction of which $11,000 of proposer purchasers' money has been used. It is clear, under the authorities already cited, that we have here no contract made by the wife, which can be enforced against her under the Statute of Frauds, and that we cannot enforce the contract of the husband against the property held by him and his wife. Doing so would subject her property to his obligations, and would permit a husband in an indirect way to compel his wife to be responsible for the payment of his debts. We, therefore, must conclude that the demurrers to the bill of complaint should have been sustained.

There is, however, another aspect of the matter which compels consideration. The bill states that the husband was unable to complete the building without the advances made to him by the appellees. This indicates at best a doubtful financial responsibility on his part. To leave the appellee in a situation where they have advanced $11,000 with no return, and where their only remedy is a suit against an impecunious husband does not afford them any adequate remedy. Of course, if the wife did not participate in the offer and did not know that the improvements were being made on her property, and that the money was advanced relying upon the oral offer, then neither she nor her property can be bound. The allegations in the bill of complaint, as it was filed, do not go far enough to justify any charge on the property. But it may very well be that the facts justify stronger and

more definite allegations as to her part in the proceedings, and a more definite prayer for relief. We do not think it proper for us to make any suggestion as to what such allegations must be. The appellees know the facts and what they are able to allege and prove. The result must depend on both the *allegata* and *probata.*

In the recent case of *Boehm v. Boehm,* 182 Md. 254, on pages 266 to 268, 34 A. 2d 447, we discussed a situation of some similarity and there entered a decree for compensation for the money advanced and made the same a lien upon the property held by a husband and wife as tenants by the entireties. In that case there was no written agreement by either the husband or the wife. There was no partial performance, and the wife denied that she knew anything about the contract. The Court, however, found as a matter of fact that she was actually a party to the contract of sale. Under these circumstances it was held that neither she, nor her husband, was entitled to the use of the Statute of Frauds to injure the purchaser and to enrich themselves at his expense, but must make restitution. See also *Chamberlain v. Preston,* 170 Md. 1, 182 A. 579.

We feel that this case is one in which the substantial merits will not be determined by the reversal or the affirmance of the order passed by the Chancellor, and that the purposes of justice may be advanced by permitting further proceedings by way of amendment to the bill of complaint. We, therefore, under the authority given us by Article 5, Section 42 of the Code of Public General Laws, will order the case to be remanded without either affirming or reversing the orders, in order that an amendment, if any is desired, may be made by the appellees to the bill of complaint, and that if such an amendment is made, then such further proceedings may be had as may be proper in accordance with the views expressed in this opinion.

> *Case remanded without either affirming or reversing the orders. Costs to await final determination of the case.*