WHITTLE ET UX. *v.* BROWN

[No. 240, September Term, 1957.]

162

*Decided May 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Francis A. Michel* and *Gordon C. Murray* for the appel-
lants.

*Daniel T. Prettyman, Jr.,* for the appellee.

HENDERSON, J., delivered the opinion of the Court.
This appeal is from a decree granting specific performance

of an alleged oral contract for the sale of four lots in Ocean City, Maryland, title to which stood in the name of Mr. Whittle. The appellants contend that the Chancellors erred in finding that the appellant, Whittle, authorized the broker, Maryland Charter Trust Company, to accept the offer made by the appellee on his own behalf, and in finding that Whittle authorized the broker to accept the offer on behalf of his wife.

It is conceded that the Whittles, who lived in Towson, listed the lots in question with Mr. Louis S. Ashman, President of Maryland Charter Trust Company, in 1953, on a non-exclusive basis and without naming a definite price. On February 5, 1955, Whittle wrote to Ashman stating: "I will be happy to consider any deal submitted to me for the sale" of the lots in question. On March 29, 1955, Mr. Brown came to the office of Mr. Ashman in Ocean City and made an offer of $15,000 for the lots. Mr. Ashman dictated the offer to his secretary, Miss Chandler, who typed it up and Brown signed it. The document was in the form of a letter to the Maryland Charter Trust Company stating that Brown was delivering "to you my check in the sum of $2,000.00 as a deposit on the said $15,000.00 Purchase Price, and I agree to pay the balance of the Purchase Price within 60 days of this date, upon receiving a good and merchant[a]ble fee simple title to the said Lots from Mr. and Mrs. James L. Whittle". Brown signed a check for $2,000 and handed it to Ashman. Miss Chandler then put in a call to the Whittle residence in Towson. Mrs. Whittle first came to the phone and called her husband, who was just leaving to attend a directors' meeting in Baltimore. Mr. Ashman took the phone and talked to Mr. Whittle. Miss Chandler sat close to the phone and listened. Mr. Brown was in the same room at the time. There is a sharp conflict in the testimony as to what transpired.

Mr. Whittle's version was that Mr. Ashman said: "I have a written offer for your lots. I have a check for $2,000.00 as deposit. What shall I do with it?" Whittle replied: " 'Well, as far as I am concerned you can do as you like with it. I am in a terrible rush to get down town at 10 o'clock. Whatever you have to say put it in writing and send it to me.' That was the end of the conversation." Mrs. Whittle

testified she heard her husband say that "he was in a rush and that he didn't have time to go into it thoroughly but to submit to him anything that he had in writing and then he would discuss it later". Both witnesses denied that anything else was said by either of them.

Mr. Ashman's version was that he told Mr. Whittle he had a written offer for the lots and a check for $2,000. Mr. Whittle asked him to read the offer, and he did so, twice. "I said you want to authorize the Maryland Charter Trust Company to sign this as your broker on behalf of yourself and your wife? He said 'Sure' ". Ashman suggested that the check be deposited in a special account. Ashman also testified: "I said * * * 'If you want me to, I will mail you the check and the contract.' He said * * * 'Put the money in that special account * * *. Don't stop to mail me that— my copy of the contract * * *. We are coming up there next Sunday * * * then we will pick up the contract of sale.' When he didn't come I wrote him a letter on the (April) 7th." Miss Chandler testified that when she got Mrs. Whittle on the phone Mrs. Whittle said: "Well, just a moment, I will call Mr. Whittle. He takes care of all the business matters." Miss Chandler turned the phone over to Mr. Ashman, but could hear both what Mr. Ashman and what Mr. Whittle said. "We had arranged it that way because of Mr. Ashman's impaired hearing." Mr. Ashman mentioned the offer and read it twice. Mr. Whittle "proceeded to authorize Mr. Ashman to proceed with the arrangements for the closing of the sale of the lots. * * * Mr. Whittle offered to come the following Sunday to Ocean City and said he'd pick up the check and agreement of sale at that time * * *." Mr. Brown testified he was present at the time, and heard Mr. Ashman refer to the offer and read it. He was not asked whether he heard what Mr. Whittle said. On the same day Ashman wrote on the bottom of the written offer: "Accepted on behalf of Mr. and Mrs. James Whittle, owners.

> /s/ Louis S. Ashman, President of
> Maryland Charter Trust Co., Real
> Estate Broker and Agent, for Mr.
> & Mrs. James L. Whittle."

Ashman wrote to Whittle on April 7, 1955, enclosing a bank statement showing the deposit of the Brown check in a special account. He referred to the conversation on March 29, "When you approved the said Contract of Sale". On April 8, 1955, Whittle wrote Ashman: "It has been ten days since you called to tell me that you were negotiating with someone for the purchase of my lots * * *. I had expected the receipt of the Contract of Sale by this time for my approval. Inasmuch as I have not heard further from you, I naturally assume that it was a 'false alarm' and the deal is off. In any event, I would suggest that you make no further effort regarding the sale of these lots." Whittle testified he did not receive Ashman's letter until after he had mailed his letter to Mr. Ashman on April 8th.

We think the decree against Mrs. Whittle cannot be sustained in any view of the case. The appellee contends that she authorized her husband to authorize Ashman to sign her name to the offer, or contract of sale, on March 29, 1955, because of Miss Chandler's testimony that Mrs. Whittle said that Mr. Whittle "takes care of all business matters". Miss Chandler did not testify that she said anything to Mrs. Whittle as to the purpose of the call. Presumably she did not know that any offer had been made, and certainly no proposal was made that her husband be authorized to sign for her, or authorize a third party to do so. The statement would seem to fall short of authority to bind her in the instant case. Oral authority to sell does not necessarily mean that the agent can make a binding contract for the principal. *Brown v. Hogan,* 138 Md. 257, 264. Agency in a particular instance cannot be implied solely from a past course of conduct or general practice. *Twilley v. Bromley,* 192 Md. 465, 470, and cases cited. Nor can it be implied from the mere relationship of husband and wife. *White v. Friel,* 210 Md. 274, 284. There is no evidence of ratification or agency by estoppel. Cf. *Lissau v. Smith,* 215 Md. 538, 546. Mrs. Whittle denied making any such statement. Indeed, she testified her husband had never acted for her, in signing any documents whatever. Mr. Ashman testified that Mrs. Whittle had told him on previous occasions that "He handles every-

thing for me", but this is insufficient to bind her. Mr. Ashman also testified that before he came on the phone Mrs. Whittle told Miss Chandler "that is up to my husband. Whatever he does he can do." This is not the version testified to by Miss Chandler, and it seems improbable that Mr. Ashman could have heard what Mrs. Whittle said to Miss Chandler before he took the phone. In any event, we think it is insufficient.

The appellants concede that a memorandum signed by a broker upon verbal authorization will satisfy the statute of frauds. *Moore v. Taylor,* 81 Md. 644. If we assume for present purposes that Mr. Whittle authorized Mr. Ashman to sign the offer on his own behalf, Mr. Ashman's testimony, that Mr. Whittle authorized him at the same time to sign on behalf of Mrs. Whittle, would seem to be no more than an admission of agency by the husband, the alleged agent. Mr. Ashman did not speak to Mrs. Whittle, and there is no evidence that she heard the question addressed to her husband by Mr. Ashman. It is well settled that "an alleged agent's own declarations are insufficient to establish his agency." *Posko v. Climatic Control Corp.,* 198 Md. 578, 583, and cases cited. It was there pointed out that, on the other hand, express agency may be shown through the testimony of an agent. See also *Salvatorian Mission v. Horn,* 210 Md. 475, 480, and *Oxweld Acetylene Co. v. Hughes,* 126 Md. 437, 440.

The Chancellors below did not rest their conclusion as to the liability of Mrs. Whittle upon a finding that Mr. Whittle was her agent in fact to authorize the broker to accept the offer on her behalf, but held that she was estopped from raising the question of agency by her answer. Paragraph 3 of the bill of complaint alleged that Whittle "acting for himself and as the authorized agent of his wife * * * did then expressly authorize the Maryland Charter Trust Co., to accept, in writing * * * the Plaintiff's aforesaid offer * * *." Paragraph 3 of the answer of the appellants alleged that "these Respondents, and each of them, again deny (as they had denied in Paragraph 2) that they ever authorized the Maryland Charter Trust Co., Louis S. Ashman, or anyone else as their agent, to execute on their behalf the alleged agreement of sale

or any other contract or agreement on their behalf with reference to the four lots * * *". Rule 372 a 2 of the Maryland Rules provides that an answer shall "* * * specifically admit, deny or explain the facts alleged by the plaintiff * * *. All material allegations in the bill * * * shall be answered". Rule 372 b provides in part: "* * * all averments, other than the amount of any damage averred, if not denied in the answer, shall be deemed to be admitted * * *". The Chancellors found that there was a failure to specifically deny the agency between the husband and the wife. It is difficult to conceive a more categorical denial by the appellants, and each of them, of any authority conferred upon the broker to approve the offer on their behalf. Indeed, her several denials that she authorized "any one else" to act as her agent in the matter would seem to include her husband. We think the answer was sufficient to put the agency in issue and that there was no basis for raising an estoppel. The case was tried upon the theory that Ashman's authority to sign as agent of the owners was the sole issue in the case. His authority, in turn, depended upon the husband's authority to bind the wife. We hold that the appellee failed to meet the burden of establishing the authority to bind the wife, directly or indirectly.

The appellee contends that even if Mrs. Whittle is not bound, he is entitled to specific performance against Mr. Whittle. If we assume, without deciding, that Mr. Whittle authorized approval of the offer on his own behalf, we think a decree for specific performance cannot be granted against either. In *Kreamer v. Hitchcock,* 207 Md. 454, 461, we said: "Section 3 [of Article 46, Code of 1951] neither enlarges nor diminishes the right of a husband or wife to convey his or her realty without the joinder of the other. Either may make such a conveyance during coverture, though the purchaser in such event may have to assume the risk of a subsequent claim for dower. *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Columbian Carbon Co. v. Knight,* 207 Md. 203, 114 A. 2d 28." In the *Trotter* case (p. 537), it was said that specific performance would only be decreed against a husband alone "if the purchaser is willing to pay the purchase price without any abatement and accept a deed from the vendor

without his wife's signature." See also the discussion in *Schneider v. Davis,* 194 Md. 316, 323 *et seq.,* where partial specific performance was denied against a husband alone, in view of the wife's inchoate right of dower, except upon payment of the full purchase price, which was not tendered. In the instant case, the bill did not pray a partial specific performance, nor did the appellee testify that he would be willing to accept the property, without abatement, subject to the wife's inchoate right of dower. In the appellee's brief it is stated: "But since the 4 lots in question are not improved with any income-producing property, the Appellee could not be expected to accept title thereto and pay the $13,000.00 balance of the purchase price, and 'assume the risk of a subsequent claim for dower' by Mrs. Whittle." In this state of the record, no partial specific performance can be decreed.

> *Decree reversed and bill dismissed, costs to be paid by the appellee.*