514 A.2d 476

Dorothy P. LITZENBERG

v.

John H. LITZENBERG.

No. 4, Sept. Term, 1986.

Court of Appeals of Maryland.

Sept. 5, 1986.

Cynthia E. Young, Annapolis, for appellant.

A. Freeborn Brown, Bel Air, for appellee.

Argued before MURPHYY, C.J., and SMITH *, EL-DRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

RODOWSKY, Judge.

Md.Code (1974, 1981 Repl.Vol.), § 5–104 of the Real Property Article provides:

> No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him.

In this case we shall hold that § 5–104 is not satisfied by corroboration of an oral, land disposition contract in testimony given by one who, as agent for the party to be charged, had agreed to the oral contract but who was not the agent of that party when so testifying.

By their divorce in 1975 petitioner, Dorothy P. Litzenberg (Dorothy), and respondent, John H. Litzenberg (John), ended a marriage which had produced six children. We are concerned in this case with two pieces of realty in Elkton, Cecil County, which the divorce left the parties owning as tenants in common. One parcel, 407 Delaware Avenue, is the former marital home which has been occupied by Dorothy who was awarded custody of the minor children. The other property is an office building at 207 West Main Street. The residence is the more valuable property but the amount of the differential is undetermined. Pursuant to the divorce decree, as modified in 1981, John paid Dorothy child support and $75 per week as alimony. John also owned 51% and Dorothy owned 49% of the stock of A.C. Litzenberg & Son, Inc., an insurance brokerage company.

John had petitioned in 1978 for the sale in lieu of partition of numerous parcels of realty owned by the parties. By the fall of 1982 disposition of all of the realty had been resolved, with the exception of the former marital home and the office building. In November 1982 Leonard H. Lockhart (Lockhart) entered his appearance in the divorce case as counsel for Dorothy who had previously been represented by a series of attorneys. Shortly thereafter Lockhart

petitioned on Dorothy's behalf for an increase in child support and alimony. A hearing on the applications for increases and on open issues in the partition case was set for the afternoon of February 9, 1983, before Judge George B. Rasin, Jr., sitting in the Circuit Court for Cecil County.

Lockhart and John's lead counsel, Bayard Z. Hochberg (Hochberg), met on Friday, February 4 to exchange discovery materials and at that time Lockhart presented a settlement proposal. Dorothy thereafter rejected a counterproposal by John. On February 8, counsel, on behalf of their respective clients, agreed in a telephone conversation on a settlement which was substantially the proposal initially made by Dorothy through Lockhart.

The main features of that agreement were:

1. John would convey all of his interest in the former marital home to Dorothy and Dorothy would convey all of her interest in the office building to John.

2. John would obtain a release of the residence from the lien of a mortgage covering both the residence and the office building and, if unable to do so, would pay the mortgage. Taxes and insurance, however, on the residence were the obligation of Dorothy.

3. The $75 per week paid by John to Dorothy would be converted from modifiable alimony to nonmodifiable contract support.

4. Each party recognized the other as the sole owner of personal property which the other then possessed or controlled.

5. Dorothy would transfer to John all of her stock in A.C. Litzenberg & Son, Inc.

6. There would be mutual releases.

Hochberg prepared the written agreement and certain related court orders. Counsel met in Elkton on the morning of February 9 at which time Lockhart reviewed and approved the documents. Lockhart then went to Dorothy's

home for the purpose of obtaining her signature on the agreement but she would not sign.

That afternoon the parties and counsel appeared before Judge Rasin at the scheduled time. Judge Rasin took testimony concerning the settlement and subsequently entered an order directing Dorothy to execute the deed and stock assignment. At that hearing Dorothy told the court that she had told Lockhart, when they had reviewed the written agreement, that it did "not cover the things that we discussed entirely and it takes into consideration other matters that we didn't discuss, and I particularly don't like the [nonmodifiable alimony] point. . . ."

Dorothy appealed to the Court of Special Appeals which remanded, without affirmance or reversal, for further proceedings. *Litzenberg v. Litzenberg,* 57 Md.App. 303, 469 A.2d 1279, *cert. denied,* 300 Md. 89, 475 A.2d 1201 (1984). The intermediate appellate court concluded that the procedures utilized by the trial judge were inadequate to resolve the dispute over the content and nature of the various communications between Dorothy and Lockhart. That court then addressed Dorothy's argument that, in any event, the settlement agreement did not comply with the Statute of Frauds. On that phase of the case it held that Lockhart's testimony had contained several statements which

> would be sufficient to constitute admissions for the purpose of satisfying the Statute of Frauds, if, in fact, Mr. Lockhart was authorized to enter into the agreement. If he had such authority, any document that he would have signed for appellant would have satisfied the Statute of Frauds. *See Strawn v. Jones,* 264 Md. 95, 98, 285 A.2d 659 (1972), and *Whittle v. Brown,* 217 Md. 161, 167, 141 A.2d 917 (1958). It follows then, under the reasoning in *Trossbach* [*v. Trossbach,* 185 Md. 47, 42 A.2d 905 (1945)], that if Mr. Lockhart's signing of a document would satisfy the Statute, then the admissions in his testimony would also satisfy the Statute. [*Litzenberg, supra,* 57 Md.App. at 316–17, 469 A.2d at 1286.]

After the remand John formally moved to enforce the settlement agreement. In answer Dorothy raised, *inter alia,* the Statute of Frauds defense. An evidentiary hearing was held before Judge John C. North, II at which Dorothy was represented by new counsel who is not Dorothy's counsel on this appeal. Lockhart testified that the proposal made by him on February 4 had been authorized by Dorothy after many discussions and that Dorothy had empowered him to accept the settlement in a face-to-face conference at Lockhart's office on February 8 at which Dorothy's accountant was also present. The accountant substantially corroborated Lockhart's description of that meeting. Dorothy again said there were variations between what she had told Lockhart she was willing to accept and the written contract. The court concluded "that Mr. Lockhart was in fact authorized by Mrs. Litzenberg to negotiate an overall settlement to her advantage; and that he did that; and that the terms and conditions of that agreement, as negotiated by him, were obviously very strongly to Mrs. Litzenberg's best interests." Judge North granted the relief requested in John's motion for enforcement of the settlement agreement.

Dorothy appealed that order to the Court of Special Appeals which affirmed in an unreported opinion. That court concluded there was legally sufficient evidence to support the finding that Lockhart was authorized to make the oral agreement on Dorothy's behalf. The court gave two reasons why the Statute of Frauds was satisfied.

When this case was first before us, we stated that Mr. Lockhart's in-court testimony regarding provisions of the agreement calling for transfers of interests in land would constitute admissions of a party such as would satisfy the Statute of Frauds, if in fact Mr. Lockhart was authorized to enter into the agreement. 57 Md.App. at 316. Since the trial court properly found that Mr. Lockhart was indeed so authorized, it follows that his testimony satis-

fied the writing and signature requirements of [the Statute of Frauds].

The court additionally found

that an acceptable substitute [for a written memorandum signed by the party to be charged] is provided by Mrs. Litzenberg's own testimony that Mr. Lockhart was her attorney at the time the settlement was entered into, together with the finding of fact that Mr. Lockhart had acted within his authority. Since the aim of the statute is the prevention of fraud, we see no harm in recognizing testimony of [Dorothy's] attorney that would otherwise constitute a judicial admission of a party but for the fact that [Dorothy] chose to dispute the scope of her attorney's authority once in court.

We issued the writ of certiorari on Dorothy's petition which raised the following questions:

A. Did the Petitioner's trial attorney have the requisite express authority from Petitioner to enter into the purported settlement agreement on her behalf?

B. Did the lower courts err in enforcing an agreement to convey interests in land where the negotiating agent lacked written authorization from his principal, and where the agency relationship had ceased at the time of sworn testimony by the agent?

C. Was the hearing court's determination that the agreement in question was fair and reasonable clearly erroneous?

We shall assume, *arguendo,* that Dorothy had expressly authorized Lockhart to enter into the oral agreement of settlement on her behalf and that the proposed written agreement prepared by Hochberg fairly and accurately memorialized the oral agreement. That brings us to the Statute of Frauds issue. The proposed written agreement was prepared for the signatures of John and Dorothy. It has neither been signed by her nor by any other person purporting to act as agent for her. There is no contention that there is any writing, signed by Dorothy or on her

behalf, which satisfies the statute. John's position is that the analysis by the Court of Special Appeals is correct.

Section 5–104 is the current version of the land contracts clause of the English Statute of Frauds, 29 Charles II, Ch. 3, § 4, Cl. 4 (1677), 2 Alexander's British Statutes 690 (Coe's ed. 1912). The English statute was in effect in Maryland until repealed by Ch. 649 of the Acts of 1971 which also enacted a replacement Statute of Frauds. The current enactment "makes no change in the case law interpreting Section IV of the British statute." *See* "Comment to Former Article 21, Title 2 [RP, Title 5]," Md.Code (1974), Real Property Article, at 67. This Court has held that various sections of the 1677 Statute of Frauds, or modern versions thereof, are satisfied by admissions in the form of sworn testimony in court or on deposition, or in an answer to a complaint. *See Lewis v. Hughes,* 276 Md. 247, 346 A.2d 231 (1975) (court testimony admitting oral sale of goods at price of $500 or more); *R.E.C. Management Corp. v. Bakst Service, Inc.,* 265 Md. 238, 289 A.2d 285 (1972) (deposition testimony admitting oral contract not performable within one year); *Adams v. Wilson,* 264 Md. 1, 284 A.2d 434 (1971) (court testimony admitting oral contract within one year provision); *Martin v. Michaels,* 259 Md. 346, 269 A.2d 833 (1970) (answer to complaint admitting an oral land contract); *Oregon Ridge Dinner Theatre, Inc. v. Hamlin,* 253 Md. 462, 253 A.2d 382 (1969) (concession on court record of oral contract to sell securities); *Friedman v. Clark,* 252 Md. 26, 248 A.2d 867 (1969) (court testimony admitting guarantee given orally); *Pollin v. Perkins,* 223 Md. 532, 165 A.2d 908 (1960) (court testimony by undisclosed principal admitting signators of land contract to be agents and authorized to sign); *Sealock v. Hackley,* 186 Md. 49, 45 A.2d 744 (1946) (court testimony admitting oral land contract). The Uniform Commercial Code, in the sales and in the securities

titles, explicitly recognizes in-court admissions as satisfying the statute.[1]

In the case before us John contends that Lockhart's testimony in the proceedings before Judge North obviates any need for a memorandum signed by Dorothy or an agent for Dorothy.

The rule which John urges us to apply came into Maryland law in *Trossbach v. Trossbach*, 185 Md. 47, 42 A.2d 905 (1945). Prior to that time a promisor who was sued on an oral contract which was within the Statute of Frauds could acknowledge the oral contract in answer to the suit but still insist upon the Statute of Frauds as a defense if that defense were raised in the answer. Judge Markall, writing for the Court in *Trossbach*, characterized this rule as simply one of equity pleading and not a part of the Statute of Frauds itself. *Trossbach* then held:

> Under existing procedure, the purpose of the Statute of Frauds is to protect a party, not from temptation to commit perjury but from perjured evidence against him. The purpose of evidence is to prove facts. Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against

---

1. Md.Code (1975), § 2–201 of the Commercial Law Article provides that a contract which does not satisfy the writing requirements but which is valid in all other respects is enforceable,

 (b) [i]f the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted[.]
 Section 8–319 of the Commercial Law Article in relevant part reads:
 A contract for the sale of securities is not enforceable by way of action or defense unless

 . . . .

 (d) The party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.
 Neither party's brief in the case before us cites § 8–319. Consequently we do not consider its bearing, if any, on the settlement agreement's stock transfer provisions. We focus exclusively on § 5–104 of the Real Property Article.

him unnecessary. ... We think the Statute of Frauds requires no more.

Furthermore, admissions of a party in the form of testimony would constitute sufficient "memoranda" under Section 4 or Section 17, or "writings" under Section 7, of the statute. For this purpose we think recorded testimony should be regarded as equivalent to signed depositions. [*Id.* at 55–56, 42 A.2d at 908.]

■ The party to be charged can satisfy the above rule by making the admissions through an agent. For example, testimony in court by an authorized officer of a corporation who acknowledges an oral contract on which the corporation is charged would satisfy the statute. In the case before us, however, Lockhart was not the agent of Dorothy when he acknowledged the settlement agreement in his testimony. His testimony is not an in-court admission by Dorothy.[2]

The point is illustrated by *Swink & Co., Inc. v. Carroll McEntee & McGinley, Inc.*, 266 Ark. 279, 584 S.W.2d 393 (1979). There the plaintiff claimed that it had purchased $2.5 million of interest-bearing debt obligations of federal agencies from the defendant, Swink. Swink had never sent the buyer the customary written confirmation of the transaction which had been effected by telephone and Swink denied that the sale ever took place. Polk, who had handled the transaction for Swink when employed by it, testified that he had made the sale, as alleged by the buyer. The buyer contended that Polk's testimony satisfied § 8–319(d)

---

**2.** We are not concerned here with Lockhart's testimony before Judge Rasin or with whether Lockhart was Dorothy's agent when he testified before Judge Rasin. Lockhart's testimony before Judge Rasin was not introduced before Judge North and is not included in the record extract. Dorothy's counsel had argued to Judge North that none of the testimony taken by Judge Rasin, other than that of Dorothy herself, was admissible against her. In response to that argument and before it became necessary for the court to rule, John's counsel stated that John would present live testimony of the same witnesses and not utilize their prior testimony.

of the Arkansas U.C.C. On that phase of the case the court said:

> There is considerable question about the sufficiency of these statements as to the details of the transaction, i.e., the quantity of the securities and the defined or stated price. Assuming, however, that they meet this test, Polk was not a party against whom enforcement is sought. It is quite true that he was Swink's agent and that he had considerable authority. Even assuming that he had authority to make admissions against the interest of Swink, however, the admissions must have been made in court in order to be effective under [U.C.C.] § 8–319(a). Polk certainly did not have any authority to make such admissions at the time he testified. His employment by Swink was terminated in February, 1976. This suit was filed one year later. He certainly was not a "party" or an agent for a party when he testified. [*Id.* at 290, 584 S.W.2d at 399.]

Lockhart was not an agent for admissions by Dorothy when he testified. His testimony does not satisfy § 5–104 of the Real Property Article.

John next submits that the writing and signing requirements of § 5–104 are satisfied in this case by Dorothy's in-court testimony, which acknowledged Lockhart to have been her agent at the time the oral settlement agreement was negotiated, together with the trial court's finding that Lockhart was in fact authorized by Dorothy to settle on the terms embodied in the written agreement prepared by Hochberg. John's argument analogizes to an agent signing a land contract for the principal. Under § 4 of the 1677 Statute of Frauds the memorandum could be signed either by the party to be charged or by "some other Person thereunto by him lawfully authorized." In contrast, § 1 of the English statute, dealing with transfers of interests in land, required a writing by the parties making the transfer "or their Agents thereunto lawfully authorized by Writing[.]" Accordingly oral authorization to the agent who signed the memorandum for the principal satisfied § 4. *See*

*Whittle v. Brown,* 217 Md. 161, 141 A.2d 917 (1958); *Moore v. Taylor,* 81 Md. 644, 32 A. 320 (1895). John submits that the statute is satisfied when a fact finder resolves conflicting testimony about the authority of an agent to sign a memorandum of a § 4 transaction by finding that the signing was orally authorized. John then takes that proposition one step further and submits that there is no difference at the level of policy between the prior proposition and the case at hand in which the court found Lockhart to have been orally authorized to settle.

One difference between the two situations is that the former factually conforms to the text of the statute while the latter does not. In the former circumstance there is a memorandum signed by the party to be charged, through the agency of one whose act of signing was authorized or ratified. In the instant case there is no memorandum of the land contract signed by anyone purporting to have acted for Dorothy. John's position necessarily rests on the validity of the proposition that the fact-finding of Lockhart's authority to settle satisfies § 5–104 and makes an oral, executory land contract enforceable.

█ John's argument goes beyond the rule that an in-court admission by the party to be charged complies with the statute. Indeed, we have held that an in-court "admission by a party that an agreement *may* have been made does not satisfy the Statute of Frauds[.]" *Lambdin v. Przyborowski,* 250 Md. 108, 112, 242 A.2d 150, 152 (1968) (emphasis in original). In that case vendors sought specific performance of a real estate contract which was contingent on the purchasers' obtaining a $21,000 loan. A building and loan association was willing to lend $19,500 and the attorney for that association testified that the purchasers agreed to a modification of the contract under which the loan shortfall would be made up equally by an additional deposit from the purchasers and by a loan secured by a hypothecation by the real estate broker. At trial that purchaser

who had negotiated for the loan was cross-examined about the attorney's testimony. He would not deny the truth of the attorney's testimony, said that it might be true, and said that he did not recall figures. Based on that testimony the trial court granted specific performance. We reversed and held that the in-court testimony rule of *Trossbach, supra*, had not been satisfied. *A fortiori*, here, where Dorothy expressly denied material aspects of Lockhart's testimony about the oral agreement, *e.g.*, nonmodifiable alimony, the *Trossbach* rule cannot be satisfied.

 Our cases also make it clear that the Statute of Frauds, at least as it applies to executory land contracts, is not satisfied by a finding that there was in fact an oral contract to transfer. *Forsyth v. Brillhart*, 216 Md. 437, 140 A.2d 904 (1958) gives the rationale. That was an action for specific performance brought by disappointed purchasers. The vendor had signed a memorandum of the contract with the plaintiffs but that memorandum was insufficient under the Statute of Frauds because it did not set forth all of the promises constituting the contract. The plaintiffs also sought to set aside, as fraudulent, a deed of the property involved made by the vendor to one who had knowledge of the oral contract with the plaintiffs. We said that the plaintiffs' argument

> is based upon a misconception of the principles of law involved in the factual situation as presented. Notice, actual or constructive, of a contract which is unenforceable under the Statute of Frauds, will not prevent the person having such notice, who purchases the property from the original owner and receives a transfer of the title, from obtaining a good title; nor will it render the transaction fraudulent. This is based upon the theory that although the original contract may subsist, the vendor may elect to rescind it and pass title to the property to another not a party to, or interested in, the prior agreement; and his action in selling the property to the

second purchaser constitutes such an election. This the vendor has an absolute right to do, and the fact that the new grantee had notice of the prior agreement creates no legal objections to the second conveyance, for there were no enforceable equities attaching under the former contract. [*Id.* at 441–42, 140 A.2d at 907.]

Accordingly, even if a demurrer has admitted the existence of an oral contract or the court has found such a contract, the statute bars specific performance or damages based on the express contract. *See Mangione v. Braverman,* 234 Md. 357, 199 A.2d 225 (1964); *Alvey v. Alvey,* 220 Md. 571, 155 A.2d 491 (1959); *Boehm v. Boehm,* 182 Md. 254, 34 A.2d 447 (1943). And where, as here, the oral agreement for the transfer of an interest in land contemplates the execution of a written document the contract is subject to disavowal until it is formally executed. *See Martin v. Call Carl, Inc.,* 202 Md. 399, 403, 96 A.2d 504, 506 (1953); *Krauss v. Litman,* 189 Md. 394, 398–99, 56 A.2d 37, 39 (1947); *Kaufmann v. Adalman,* 186 Md. 639, 645, 47 A.2d 755, 760 (1946); *Whitchurch v. Bevis,* 2 Bro.C.C. 560, 569, 29 E.R. 306, 311 (1789).

In view of our holding on the Statute of Frauds issue, it is unnecessary to consider the third issue presented, concerning the fairness of the agreement.[3]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT REVERSING THE ORDER APPEALED FROM AND REMANDING THE CASE TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY JOHN H. LITZENBERG.

---

**3.** The fact that our grant of certiorari embraced all of the issues raised by Dorothy, including the third issue, in no way indicates whether, or if so, to what extent, the trial court had any function to review the fairness of the agreement involved here.