604 A.2d 931

Charles F. BARRANCO

v.

Mary Seeley BARRANCO.

No. 1147 Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 15, 1992.

Cynthia E. Young, Annapolis (Charles F. Barranco, Timonium, on the brief), for appellant.

Andrew Janquitto (Mudd, Harrison & Burch, Timothy J. Martin and Beach, Cadigan & Martin, on the brief), Towson, for appellee.

Argued before MOYLAN, BLOOM and DAVIS, JJ.

MOYLAN, Judge.

The appellant, Charles F. Barranco (Husband), appeals from an order of the Circuit Court for Baltimore County granting the Motion to Enforce Settlement Agreement and/or Motion for Specific Performance of Settlement Agreement filed by his wife, the appellee Mary Seeley Barranco (Wife).

In April, 1990, the Wife filed a complaint for an absolute divorce based on adultery. She sought, among other things, alimony, a monetary award, an interest in the Husband's pension, contribution for expenses relating to the maintenance of the marital home, counsel fees, and litigation expenses. The Husband filed a counterclaim for an absolute divorce on the grounds of constructive desertion and ouster. He later amended his counterclaim, seeking a divorce on the grounds of a two-year separation.

Before the trial, the parties attempted to reach a settlement regarding the disposition of their marital property. Settlement negotiations intensified as the April 5, 1991, trial date approached. The Wife contends that, on the late afternoon of April 2, 1991, the parties, through counsel, entered into a comprehensive oral settlement agreement. The attorneys thereafter dismissed the witnesses they had subpoenaed for trial. On the next day, the Husband's

attorney notified the Wife's attorney that the Husband could not live with the agreement and that he wanted to renegotiate certain provisions. The Wife refused to do so. She filed a Motion to Enforce Settlement Agreement and/or Motion for Specific Performance of Settlement Agreement.

A hearing was held on the matter in open court. Following that hearing, the circuit court granted the Wife's motion. The court found "that the parties did enter into a binding settlement agreement on April 2, 1991, which resolved all financial and property issues arising from and relating to their marriage." On this appeal, the Husband contends that the evidence was not adequate to establish the existence of an oral settlement agreement concerning the transfer of interests in real property and that, if there was an oral agreement, it is unenforceable under the Statute of Frauds.

At the time of the settlement negotiations concerning marital property, the Husband was represented by Emma Twigg Clarke. The Wife was represented by Richard C. Burch. At the hearing on the Wife's motion to enforce the settlement agreement, both Ms. Clarke and Mr. Burch were called to testify regarding the negotiations on April 2, 1991. Since her attorney would be testifying, the Wife chose to retain new counsel to represent her with respect to her motion. The Husband chose not to retain new counsel.

Mr. Burch testified at length regarding a series of telephone conversations he had with Ms. Clarke on April 2, 1991. During those phone conversations, a number of proposals and counter-proposals were made with respect to a settlement of the parties' marital property. Mr. Burch testified that the Wife was in his office on the afternoon of April 2 when the negotiations continued. Various matters were discussed, including the marital home; property which the parties owned in Nags Head, North Carolina; attorneys' fees; litigation expenses; and debts. He testified that finally all matters were resolved. It was agreed that Ms. Clarke would prepare an outline or a document setting out the agreement so that nothing would be forgotten when the

matter proceeded to trial on April 5. It was also agreed that the grounds for the divorce would be a two-year separation. In the afternoon of the next day, however, Mr. Burch received a call from Ms. Clarke telling him that her client had called her and had said that "he cannot live with the deal." She communicated a counter-proposal made by the Husband, which the Wife refused to accept.

Notes made by Mr. Burch immediately after the telephone conversations with Ms. Clarke on April 2, setting out the provisions of the agreement, were admitted into evidence. Mr. Burch testified that the parties agreed, among other things, that the Husband would transfer his interest in the marital home to the Wife and that the Wife would transfer her interest in the Nags Head property to the Husband. It was further agreed that the Husband would sign a confessed judgment note for $7,500, at nine per cent interest per annum, the interest payable yearly and the principal payable in three years or upon sale of the Nags Head property, whichever occurred first. There was also an acceleration provision in the event of a default. In addition, the parties resolved the distribution of proceeds from the sale of another piece of property in Nags Head, pension rights, personal property matters, debts, attorneys' fees, and litigation expenses.

Ms. Clarke testified that she entered her appearance on behalf of the Husband in February, 1991, and that she was still his attorney of record. She testified regarding the settlement discussions she had by telephone with Mr. Burch on April 2. Throughout that day, she was also in telephone communication with her client concerning the various proposals and counter-proposals. Ms. Clarke testified that around 4 p.m. on April 2, "there seemed to be an agreement." It was agreed that the Wife would get the marital home and the Husband would get the Nags Head property. She confirmed Mr. Burch's testimony regarding the other details of the agreement. She further testified that, on the next morning, she got a message from the Husband on her answering machine that "I don't want to do the deal....I

can't live with it." The Husband wanted to accept one of his Wife's earlier options. In addition, Ms. Clarke testified that, when Mr. Burch requested on April 2 that she prepare a written document setting out all of the provisions of the agreement, it was her understanding that the document would be a separation agreement, to be signed by both parties.

The Husband acknowledged that Ms. Clarke was his agent during the negotiations and acknowledged that there was an agreement on April 2 regarding various matters. He testified that the provisions which the parties negotiated on April 2 were to be reduced to a formal written agreement.

█ We hold that the evidence was sufficient to permit a finding that there was an oral settlement agreement and that the Husband authorized his attorney, Ms. Clarke, to enter into the agreement on his behalf. The Husband argues, however, that there was no binding agreement because certain substantive issues, including alimony, tax consequences, personal property, and mortgages, were not discussed on April 2. With respect to alimony, Mr. Burch testified that this issue was not discussed because it was agreed that, if the case were settled, there would be no claim for alimony. With respect to the personal property, this issue appears to have been resolved in the agreement. With respect to the other issues, even assuming that this contention was squarely presented to the circuit court and is preserved for appellate review, the fact that there were remaining issues which were not discussed and resolved on April 2 would not, under the circumstances of this case, defeat the binding nature of the agreement. The parties here clearly agreed that the agreements they had reached were to be binding, notwithstanding the fact that there were other issues in the case yet unresolved.

█ The question remains whether the oral agreement, which involved the transfer of interests in land, is enforceable under the Statute of Frauds. The provision of the

Statute of Frauds involving executory contracts for the sale or disposition of land or an interest therein is now codified in Md.Real Prop.Code Ann. § 5–104 (1988 Repl.Vol.). That section provides:

> "No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him."

The purpose of the writing requirement of the Statute of Frauds is to protect a party from perjured evidence. Evidence against a party is unnecessary, however, where that party admits the facts in a judicial proceeding. *Trossbach v. Trossbach*, 185 Md. 47, 42 A.2d 905 (1945). The Statute of Frauds is satisfied "by admissions in the form of sworn testimony in court or on deposition, or in an answer to a complaint." *Litzenberg v. Litzenberg*, 307 Md. 408, 415, 514 A.2d 476 (1986).

▮▮▮▮ Such admissions may be made through an agent. *Litzenberg v. Litzenberg, supra.* At the hearing, Ms. Clarke testified that she still represented the Husband. Her testimony that she and Mr. Burch entered into an oral settlement agreement on April 2, 1991, on behalf of the parties, and with her client's approval, was an in-court admission sufficient to satisfy the Statute of Frauds. Furthermore, the appellant himself admitted that the parties reached an agreement on April 2 which included the transfer of interests in the marital home and in the Nags Head property.

The appellant contends, nevertheless, that any oral agreement to transfer interests in land was subject to disavowal because it contemplated the execution of a formal written document. He quotes *Litzenberg v. Litzenberg, supra*, at 421, 514 A.2d 476, to the effect that "where ... the oral agreement for the transfer of an interest in land contemplates the execution of a written document the contract is subject to disavowal until it is formally executed." The

cases which *Litzenberg* cites for that proposition involved tentative agreements. *See Martin v. Call Carl, Inc.,* 202 Md. 399, 96 A.2d 504 (1953); *Krauss v. Litman,* 189 Md. 394, 56 A.2d 37 (1947); *Kaufmann v. Adalman,* 186 Md. 639, 47 A.2d 755 (1946). That was not the case here. The oral agreement here was not a tentative agreement. It was not contingent upon a written agreement. It did not contemplate a written agreement to finalize terms not already finalized. Any written document was merely intended to memorialize the terms. In this case, the Husband and the Wife struck a deal. The Husband cannot admit the agreement under oath but disavow it because he had a change of heart. The circuit court properly granted the Wife's motion to enforce the settlement agreement.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.