**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1689

FEDDER DEVELOPMENT CORPORATION,

Plaintiff - Appellant,

versus

FB HAGERSTOWN, LLC,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Magistrate Judge. (CA-04-2694-JKB)

Argued: May 24, 2006                          Decided: June 23, 2006

Before WILKINSON, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Ira Lee Oring, FEDDER & GARTEN, P.A., Baltimore, Maryland, for Appellant. Craig David Roswell, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Timothy Manuelides, FEDDER & GARTEN, P.A., Baltimore, Maryland, for Appellant. Kathleen L. H. Petty, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Fedder Development Corporation commenced this action against FB Hagerstown, LLC seeking specific performance of an alleged agreement for the sale of Long Meadow Shopping Center in Hagerstown, Maryland. The trial judge granted summary judgment to FB Hagerstown, concluding that no enforceable contract existed. Fedder appeals and we affirm.

I.

In late 2003, the parties entered into negotiations concerning purchase of the shopping center. During the negotiations, FB Hagerstown's attorney sent Fedder's attorney an e-mail containing a draft real estate purchase agreement, stating that "the contract is not binding on either party unless and until executed by and delivered to both parties." J.A. 19. The following month, in response to a set of changes from Fedder's attorney, FB Hagerstown's attorney revised the draft agreement and again explained that "the contract is not binding on either party unless and until executed by both parties." J.A. 32. FB Hagerstown's attorney further wrote that the draft of the contract is "subject to whatever comments [my client] may have." J.A. 33. The parties continued to make revisions to the agreement, with FB Hagerstown's attorney continuing to qualify that the agreement was subject to FB

2

Hagerstown's approval and was not binding on FB Hagerstown until FB Hagerstown signed it.

On June 10, 2004, FB Hagerstown's attorney sent a "redline" comparison of the most recent draft agreement and, working on the "assumption that [the] changes [were] acceptable" to Fedder, an "execution copy" of the agreement. J.A. 39. FB Hagerstown's attorney stated that, if Fedder executed five copies of the agreement and delivered them to the parties' escrow agent with an initial deposit of $100,000, he would ask his client to print out and execute the same number of copies of the agreement.

At the end of the month, Fedder's attorney responded that he had five signed copies of the agreement and the deposit check, and asked whether he should send the copies and check to FB Hagerstown's attorney or directly to the escrow agent. After several days without any response, Fedder learned that FB Hagerstown had called off the deal. Fedder then forwarded the signed copies and deposit check to the escrow agent. FB Hagerstown never signed the agreement.

The following month, Fedder brought suit in a Maryland state court seeking specific performance of the agreement. FB Hagerstown removed the action to federal court, where the parties consented to have the case heard by U.S. Magistrate Judge James K. Bredar. On cross-motions for summary judgment, Judge Bredar granted summary judgment to FB Hagerstown. Judge Bredar found that FB Hagerstown

3

made it clear that the contract would not be binding until it was signed.  Furthermore, to the extent that any agreement existed, the statute of frauds required proof of a writing signed by FB Hagerstown or someone with authority to bind FB Hagerstown.  Judge Bredar also determined that Fedder failed to comply with FB Hagerstown's execution and delivery terms prior to FB Hagerstown's disavowal of the agreement.

Fedder appeals, claiming that the statute of frauds does not bar this cause of action and that Fedder properly accepted the contract.  We review de novo the grant of summary judgment.  See Summerville v. Microcom Corp., 42 F.3d 891, 893 (4th Cir. 1994).

II.

A.

We turn first to Fedder's argument that the statute of frauds does not bar this action because FB Hagerstown admitted the existence of the contract in deposition testimony.  Maryland's statute of frauds traces its ancestry to the 1677 English Statute of Frauds.  See Litzenberg v. Litzenberg, 514 A.2d 476, 479 (Md. 1986).  The current version of the statute applicable in Maryland provides:

> No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him.

4

Md. Code Ann., Real Prop. § 5-104 (2006).

The purported contract Fedder seeks to enforce is undoubtedly a contract for the sale of land and, thus, is subject to the statute. The problem for Fedder is that FB Hagerstown never signed the agreement. Nevertheless, Fedder argues that the contract is enforceable under the "in-court admission" exception to the statute. Under this exception, an oral contract otherwise barred by the statute of frauds can still bind a party if the party admits its existence with "sworn testimony in court or on deposition, or in an answer to a complaint." Litzenberg, 514 A.2d 476, 479 (Md. 1986); see also Trossbach v. Trossbach, 42 A.2d 905, 908 (Md. 1945) ("Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against him unnecessary. We think the Statute of Frauds requires no more. Furthermore, admissions of a party in the form of testimony would constitute sufficient 'memoranda' under Section 4 or Section 17, or 'writings' under Section 7, of the statute [then in force].") (citations omitted).

We do not agree with Fedder that the in-court admission exception to the statute applies to this case. From the outset of the negotiations, FB Hagerstown's attorney made it clear that his client would not consider itself bound by any agreement until it had signed a final, written document. Thus, this is not the typical in-court admission case where the parties to a contract

5

subject to the statute of frauds always intended the contract to remain oral. Rather, the parties contemplated an agreement in written form that would not be binding until it was signed by and delivered to both of them. See J.A. 19 (e-mail from FB Hagerstown's attorney stating that "the contract is not binding on either party unless and until executed by and delivered to both parties"). Maryland law is clear that where the transfer of land contemplates execution of a written document, the in-court admission exception does not apply. See Litzenburg, 514 A.2d at 482 ("[W]here, as here, the oral agreement for the transfer of an interest in land contemplates the execution of a written document the contract is subject to disavowal until it is formally executed."); Pearlstein v. Maryland Deposit Ins. Fund, 552 A.2d 51, 56 (Md. Ct. Spec. App. 1989) ("Under [the statute of frauds] and Litzenberg, the agreement should have been in writing and signed, because it concerned land and because it contemplated the execution of formal, written documentation. Accordingly, we reject appellants' argument that the oral testimony exception to the statute of frauds applies in this case."); cf. Barranco v. Barranco, 604 A.2d 931, 934 (Md. Ct. Spec. App. 1992) (finding that in-court admission exception did apply because the oral agreement "was not a tentative agreement[,] . . . was not contingent upon a written agreement[,] . . . [and] did not contemplate a written agreement to finalize terms not already finalized").

Because the purported agreement concerned the sale of land and contemplated that it would not become binding until execution of a formal written agreement by the parties, we decline to apply the in-court admission exception to the statute of frauds.

B.

We next address Fedder's contention that, even if the in-court admission exception does not apply, the June 10 e-mail from FB Hagerstown's attorney satisfies all required elements of the statute. In other words, Fedder argues that the e-mail is a written memorandum "signed by the party to be charged or some other person lawfully authorized by him." Md. Code Ann., Real Prop. § 5-104.

The June 10 e-mail contained a "redline" comparison of the most recent draft agreement and, on the "assumption that [the] changes [were] acceptable" to Fedder, an "execution copy" of the agreement. J.A. 39. The e-mail instructed that, if Fedder's attorney delivered five executed copies of the agreement to the parties' escrow agent with an initial deposit of $100,000, FB Hagerstown's attorney would ask FB Hagerstown to print out and execute the same number of copies of the agreement. The e-mail contained the attorney's printed name and contact information at the bottom, as had appeared in his previous e-mail correspondence.

7

Fedder claims this e-mail constitutes a signed memorandum satisfying the statute of frauds. We disagree.

To be enforceable under the statute of frauds, "the required memorandum must be (1) a writing (formal or informal); (2) signed by the party to be charged or by his agent; (3) naming each party to the contract with sufficient definiteness to identify him or his agent; (4) describing the land or other property to which the contract relates; and (5) setting forth the terms and conditions of all the promises constituting the contract made between the parties." Beall v. Beall, 434 A.2d 1015, 1018 (Md. 1981). Some of these required elements certainly appear to be present. For example, the contract attached to the e-mail was in writing, named each party to the contract with sufficient definiteness, and described the land or other property to which the contract related. However, the e-mail fails to satisfy the statute of frauds because it was not signed by FB Hagerstown or by some other person lawfully authorized by it.

Throughout the negotiations, FB Hagerstown's attorney stressed that the agreement would not be binding until his client signed and that his client reserved the right to make changes to the drafts of the agreement. See, e.g., J.A. 19 (e-mail from FB Hagerstown's attorney forwarding initial draft to Fedder's attorney, reserving for comments or changes by FB Hagerstown and explaining that contract would not be binding unless and until signed by and

8

delivered to both parties); J.A. 31 (e-mail from FB Hagerstown's attorney stating that there may be further changes from FB Hagerstown); J.A. 33 (e-mail from FB Hagerstown's attorney noting that draft was "subject to whatever comments [my client] may have"). Furthermore, the June 10 e-mail stated that FB Hagerstown's attorney would not ask his client to execute the agreement until Fedder had executed five copies of the agreement and forwarded them to the escrow agent with a $100,000 deposit. These requirements demonstrate that FB Hagerstown, and not its attorney, possessed the sole authority to bind itself to the agreement. Thus, even if we construe the attorney's automatically generated name and contact information to be a "signature" for purposes of the statute of frauds, there is no legitimate dispute that he was not authorized to bind his client to the agreement.[*]

Importantly, Fedder explicitly states in its reply brief that it does not contend that FB Hagerstown's attorney had the authority to bind FB Hagerstown to the agreement. Fedder argues instead that, because FB Hagerstown authorized its attorney to transmit the agreement for execution, the attorney's "signature" satisfied the statute of frauds. We are not persuaded. Fedder has offered no

---

[*]Given our conclusion that FB Hagerstown's attorney lacked the authority to bind it to the agreement, we express no opinion concerning whether automatically generated contact information in an e-mail amounts to a "signature." This appears to be an issue of first impression under Maryland law, and we decline to address because it is not necessary to our decision.

9

case law or rationale to support this argument, and we are hard pressed to accept that the signature of one whose authority is limited to delivering a proposed contract can satisfy the statute of frauds. The statute is clear that the memorandum must be in writing and signed by "the party to be charged or some other person lawfully authorized by him." Md. Code Ann., Real Prop. § 5-104; cf. Beall, 434 A.2d at 1018 (requiring the memorandum to be "signed by the party to be charged or by his agent"). The scope of this authority or agency must include the authority to bind the principal to the contract, not merely the authority to deliver the contract. Otherwise, the signatures of couriers and delivery staff could bind principals even where, as in this case, the principal had reserved the sole authority to act in its own name.

C.

Finally, Fedder argues that a binding contract existed because it properly accepted the contract prior to FB Hagerstown's disavowal. As discussed above, because the statute of frauds applies to this case and there is no signed memorandum, Fedder's claim is barred. However, even if it were not so barred, Fedder's actions did not amount to an acceptance of an offer that could form a binding contract.

In his June 10 e-mail, FB Hagerstown's attorney gave instructions on how Fedder should execute and deliver the contract.

10

The attorney asked the appropriate authorized officer of Fedder to sign five copies of the agreement and stated:

> If you will deliver the copies to the Escrow Agent for its signature along with the Initial Deposit of $100,000.00, I will request [FB Hagerstown] print out and execute the same number . . . for delivery to the Escrow Agent as well. The Escrow Agent can then sign and date all copies of the Contract, retain one original, and then return two fully executed originals to you, and return two originals to me for [FB Hagerstown] along with evidence of receipt of the Initial Deposit.

J.A. 39.

Fedder's attorney responded by saying that the changes were acceptable and that he was forwarding the document to his client for signature "with the instruction that he send to [the escrow agent]." J.A. 84. Over two weeks later, Fedder's attorney sent another e-mail saying that he had the executed copies and deposit check, and wanted to know if he should send the contracts to FB Hagerstown's attorney for signing or send them to the escrow agent. Without ever signing the agreement, however, FB Hagerstown called off the deal before Fedder delivered the signed contracts to the escrow agent or to FB Hagerstown's attorney. Fedder claims that, by notifying FB Hagerstown's attorney that it had signed the agreement and prepared a deposit check, it accepted the offer and formed a binding contract.

We disagree. Under general principles of contract law, an enforceable contract is formed where one party makes an offer and the other party accepts before the offer is revoked. See Prince

11

George's County v. Silverman, 472 A.2d 104, 112 (Md. Ct. Spec. App. 1984) ("A contract is formed when an unrevoked offer made by one person is accepted by another."). "An 'offer' is the 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Id. (quoting Restatement (Second) of Contracts § 24 (1979)). In other words, an offer is something that can be accepted to form a binding contract without any further action on the part of the offeror.

In the present case, FB Hagerstown made clear from the outset that "the contract is not binding on either party unless and until executed by and delivered to both parties." J.A. 19. Thus, the June 10 e-mail specifying instructions for Fedder's signature and delivery could not have amounted to an "offer," because, even had Fedder followed the instructions exactly, FB Hagerstown still had to sign the agreement to be bound. In other words, FB Hagerstown reserved the last act of contract formation for itself.

Even had the June 10 e-mail been an offer, Fedder failed to accept in the manner prescribed by FB Hagerstown's attorney. "Under general principles of contract law, when a method of performance necessary to constitute acceptance of an offer has been prescribed, performance in some other manner does not constitute acceptance." Baltimore County v. Archway Motors, Inc., 370 A.2d 113, 116 (Md. Ct. Spec. App. 1977). By stating that "if" Fedder

12

delivered five signed copies of the agreement to the escrow agent with a deposit check, "I will request [FB Hagerstown] print out and execute the same number," J.A. 39, FB Hagerstown's attorney was placing an express condition on how Fedder should proceed. Cf. Gilbane Bldg. Co. v. Brisk Waterproofing Co., 585 A.2d 248, 251 (Md. Ct. Spec. App. 1991) ("Although no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional, as have the words 'when,' 'after,' 'as soon as' or 'subject to.'") (citations omitted).

As Judge Bredar correctly explained, "it is crystalline . . . that material terms of the contract - the execution and delivery terms deliberately designed to preserve [FB Hagerstown's] position to the last - were not met by [Fedder] prior to repudiation of the deal by [FB Hagerstown]." J.A. 12. Thus, because FB Hagerstown reserved the last act of contract formation for itself, and because Fedder failed to follow instructions that were a condition to FB Hagerstown's completion of that act, no enforceable agreement exists.

III.

From day one, FB Hagerstown reserved the right not to be bound by the contract until it had been signed by and delivered to both parties. Thus, whether viewed under the statute of frauds or simply the intentions of the parties, without FB Hagerstown's signature, no enforceable agreement could have existed. For the foregoing reasons, we affirm the grant of summary judgment to FB Hagerstown.

<u>AFFIRMED</u>